PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant,*

v.

JOHN JOEL FOSTER, a/k/a Jack
Foster,

        *Defendant-Appellee.*

No. 10-5028

Appeal from the United States District Court
for the Western District of Virginia, at Big Stone Gap.
James P. Jones, District Judge.
(2:09-cr-00017-jpj-pms-1)

Argued: September 23, 2011

Decided: November 30, 2011

Before AGEE and WYNN, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Vacated and remanded by published opinion. Judge Agee
wrote the majority opinion, in which Senior Judge Hamilton
joined. Senior Judge Hamilton wrote a concurring opinion.
Judge Wynn wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Jean Barrett Hudson, OFFICE OF THE UNITED
STATES ATTORNEY, Charlottesville, Virginia, for Appel-

lant. Nancy Combs Dickenson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Abingdon, Virginia, for Appellee. **ON BRIEF:** Timothy J. Heaphy, United States Attorney, Ashley B. Neese, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellant. Larry W. Shelton, Federal Public Defender, Roanoke, Virginia, for Appellee.

## OPINION

AGEE, Circuit Judge:

Under the Armed Career Criminal Act ("ACCA"), a defendant may be sentenced as an Armed Career Criminal (and thus subject to a fifteen-year mandatory minimum sentence) if he violates 18 U.S.C. § 922(g) and has at least three prior convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). Though burglary is an enumerated "violent felony" under § 924(e)(2)(B)(ii), not all burglary convictions qualify for ACCA purposes. The Supreme Court has defined burglary as a violent felony under the ACCA only if the breaking and entering was what it terms generic burglary: "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). Where a burglary statute is non-generic—that is, defines burglary more broadly than a burglary of a building or structure—a conviction under such a statute qualifies as a violent felony only if the defendant violated that portion of the statute which proscribes entry into a building or structure.

We address in this case whether John Joel Foster's prior convictions for breaking and entering the "Sunrise-Sunset Restaurant" and the "Corner Market" under Virginia's non-generic burglary statute qualify as violent felonies under the

ACCA. The district court found that they do not. We disagree and find that the language of the relevant indictments mandates that the prior convictions were based on entries into buildings or structures. We therefore vacate Foster's sentence and remand this case for resentencing.

I.

After a jury found Foster guilty of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), Foster's presentence investigation report ("PSR") reflected he was subject to the fifteen-year mandatory minimum punishment of the ACCA. Foster's predicate offenses, the PSR indicated, were three prior convictions for breaking and entering under Virginia's non-generic breaking and entering statute.[1] Foster objected to the PSR, arguing that those convictions referred not to burglaries of a building or structure—as required by the Supreme Court to qualify as a violent felony—but were

---

[1]At the time of the convictions, which were obtained via guilty pleas, the Virginia breaking and entering statute read:

> If any person in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any office, shop . . . storehouse, warehouse, banking house, or other house, or any ship, vessel, or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape or robbery, he shall be deemed guilty of statutory burglary. . . .

Va. Code § 18.2-90 (1992) (amended 2004). As discussed in greater detail below, because the statute "encompasses not only unlawful entry into 'a building or structure,' but, under some circumstances, an automobile, truck, ship, or railroad car, as well," the parties correctly agree that this definition is broader than the definition of generic burglary as set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *United States v. Baxter*, 642 F.3d 475, 477 (4th Cir. 2011). *See also Shepard v. United States*, 544 U.S. 13, 17 (2005) (defining "generic burglary" as the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime") (quotation marks omitted).

ambiguous as to the "Corner Market," "Sunrise-Sunset Restaurant," and "blacksmith shop."

The district court found that Foster's conviction for breaking and entering the blacksmith shop qualified as a crime of violence under the ACCA based on the word "shop."[2] As for the remaining convictions, the district court concluded that the "Sunrise-Sunset Restaurant" and the "Corner Market" were proper, rather than descriptive, names and that restaurants and markets are sometimes conducted in places other than buildings. The district court reasoned that because the convictions could not be found to have taken place in buildings or structures, those convictions did not qualify as violent felony offenses under the ACCA. Determining that the ACCA did not apply, the district court sentenced Foster to twenty-seven months' imprisonment as opposed to an ACCA-mandated sentence.

The government filed a timely notice of appeal, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We consider de novo whether an offense qualifies as a violent felony under the ACCA. *United States v. Thompson*, 421 F.3d 278, 280-81 (4th Cir. 2005). As the Court recently explained:

> To determine whether an offense under state law falls within the definition of a violent felony, courts generally employ a categorical approach, under which consideration is given only to the essential elements of the offense and the fact of conviction. *See United States v. White*, 571 F.3d 365, 368 (4th Cir. 2009). Burglary is a "violent felony" under the ACCA. 18 U.S.C. § 924(e)(1)(B)(ii). Interpreting the

---

[2]Foster does not challenge this finding of the district court on appeal.

ACCA, the Supreme Court has held that "a person has been convicted of burglary . . . if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990).

While a sentencing court normally may look only to the statutory elements of an offense and the fact of the conviction, because some statutes (like the Virginia provisions at issue here) define burglary broadly to encompass enclosures other than "a building or structure," the categorical approach "may permit the sentencing court to go beyond the mere fact of conviction" in certain cases. *Id.* at 602. Thus, an offense will constitute burglary if the jury was required "to find all the elements of generic burglary in order to convict the defendant," and "the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building," so "the jury necessarily had to find an entry of a building to convict." *Id.* In cases where, as here, the defendant pled guilty to the prior offense, a federal sentencing court may consider certain court documents, including but not limited to the indictment, a transcript of the plea colloquy and/or the written plea agreement. *Shepard v. United States*, 544 U.S. 13, 20–21 (2005).

*United States v. Baxter*, 642 F.3d 475, 476-77 (4th Cir. 2011).

The parties agree that because the applicable Virginia statute is broader than "generic burglary" as defined by the Supreme Court in *Taylor*, we should review *Shepard*-approved documents "to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense." *Shepard*, 544 U.S. at 26.

III.

The relevant Virginia statute defined breaking and entering as a crime under three separate clauses: (1) an "office, shop . . . storehouse, warehouse, banking house, or other house"; (2) a "ship, vessel, or river craft or any railroad car"; or (3) "any automobile, truck, or trailer . . . [being] used as a dwelling or place of human habitation." Va. Code § 18.2-90 (1992) (amended 2004). For the reasons that follow, only the first category, which consists entirely of buildings and structures, could have applied to breaking and entering the Sunrise-Sunset Restaurant and the Corner Market.

Taking the clauses in reverse order, the Supreme Court of Virginia provided some guidance as to the "automobile, truck, or trailer" clause in *Graybeal v. Commonwealth*, 324 S.E.2d 698, 700 (Va. 1985), where it reversed a conviction under Va. Code § 18.2-91[3] because the proof at trial established at most that the defendant had robbed a trailer. In the court's view,

> [s]ince the structures broken and entered into were trailers, and since there was no proof that the trailers were used as dwellings or places of human habitation, then [the defendant] did not commit statutory burglary by breaking and entering them.

*Id.* at 700. Importantly, in rejecting the prosecution's alternative argument that a trailer might be characterized as an "other house" under the statute, the court reasoned:

> The Commonwealth argues that even if the convictions cannot be upheld on the basis of breaking and

---

[3]At the time *Graybeal* was decided, Va. Code § 18.2-91 read in pertinent part: "[i]f any person do any of the acts mentioned in § 18.2-90 with intent to commit larceny, or any felony other than murder, rape or robbery, he shall be deemed guilty of statutory burglary. . . ." 324 S.E.2d at 699 (ellipsis in original).

entering twelve trailers, they can be upheld because the structures fall under the category "other house" that is set forth in Code § 18.2-90. We find no merit in this argument. The phrase "other house" is a general phrase placed at the end of a list of specific references to various structures. Those specific structures share the common element of being improvements affixed to the ground, that is, they are realty. Under the doctrine *ejusdem generis*, the general phrase "other house" must look for its meaning to the specific items which precede it. *See Martin v. Commonwealth*, 295 S.E.2d 890 (Va. 1982). The structures into which Graybeal entered were not realty. Thus, they do not fall within the scope of "other house." In our opinion, it would violate sound principles of statutory construction and strain the clear intendment of the statute to hold that a trailer not used as a dwelling nevertheless falls under the definition of "other house."

*Id.*

Hence, to sustain a conviction of Foster under the Virginia statute for burglary of an automobile, truck, or trailer, the indictments necessarily would have been required to allege that such automobile, truck, or trailer was "a dwelling or place of human habitation." We agree with the government that as none of the pertinent state indictments contained such a charge the third clause of Virginia Code § 18.2-90 could not have applied to Foster's prior convictions.[4] Accordingly, we next determine whether the only possible basis for Foster's convictions was the first clause of § 18.2-90, or whether the convictions could have been based on the second clause.

---

[4]Thus, because an indictment for breaking and entering a vehicle would have been required to state that it was a place of human habitation, the statute leaves no room for Foster's argument that the Sunrise-Sunset Restaurant might have been a food truck.

Courts are, of course, permitted to draw reasonable inferences from the underlying state charging documents.[5] Here, given their names and locations—as well as what Foster removed from the Corner Market—it is reasonable to infer that the Sunrise-Sunset Restaurant and the Corner Market are buildings or structures.

With respect to the second clause, Foster abandoned at oral argument the contention that the Corner Market or Sunrise-Sunset Restaurant might have been located on a ship or vessel when his counsel conceded that the sole navigable river in Lee County, Virginia "might [only] accommodate a small boat."[6] Hence, the only remaining possibility that Foster's convictions were non-generic under the Virginia statute's second clause is that the restaurant or market was located on a small river craft or in a railroad car.

The more-than-remote possibility that a restaurant or Corner Market could be conducted in a railroad car or on a river craft does not undermine the compelling conclusion that Foster's convictions were for the burglaries of buildings or struc-

---

[5]*See, e.g.*, *United States v. Miller*, 478 F.3d 48, 52 (1st Cir. 2007) (noting "an inquiring court has the right to draw reasonable inferences from the evidence" and "is not required either to wear blinders or to leave common sense out of the equation"); *United States v. Proch*, 637 F.3d 1262, 1266 (11th Cir. 2011) (finding that "logic dictates" that the locations of businesses "suggest two separate and distinct criminal episodes"); *United States v. Rainer*, 616 F.3d 1212, 1216 (11th Cir. 2010) (holding a theoretical possibility that a business did not operate in a building did not undermine the conclusion that two prior convictions were for burglary of a building); *United States v. Letterlough*, 63 F.3d 332, 335 (4th Cir. 1995) (applying "common sense definition" to glean Congressional intent in an ACCA case).

[6]Oral Argument Transcript at 21:14. We take judicial notice of a map of Lee County, Virginia, *see Proch*, 637 F.3d at 1266 n.1, and conclude that, given the topography of the County—a landlocked county bordering Kentucky and Tennessee—counsel is correct: it is all but impossible that the Sunrise-Sunset Restaurant or Corner Market could exist in Lee County on a "ship [or] vessel."

tures.[7] As the First and Eleventh Circuits have recognized, courts are not required to abandon logic and embrace the absurd in conducting an ACCA analysis. *See United States v. Miller*, 478 F.3d 48, 52 (1st Cir. 2007) (holding that "given the references to Trader Jack's as a store containing a safe, we believe that the district court drew a reasonable inference and rendered a logical conclusion: that Trader Jack's was a store and, thus, a building"); *United States v. Rainer*, 616 F.3d 1212, 1216 (11th Cir. 2010) (finding that although it was "theoretically" possible for a shoe store to be "operated out of a vehicle, that possibility is too farfetched to undermine our conviction that Rainer's two previous convictions were for burglary of a building in the generic burglary sense of the word").

This conclusion is augmented by our prior decision in *United States v. Shelton*, 196 Fed. Appx. 220 (4th Cir. 2006) (unpublished). In *Shelton*, we concluded that an indictment charging the defendant with breaking and entering "the business of All American Car Wash" established that the prior conviction was for a generic burglary: "[w]e believe the reference to 'the business' necessarily ensures that Shelton sought to enter 'a building or structure.'" *Id.* at 222. If the broad term "business" in *Shelton* sufficiently defined a generic burglary, so too should the more explicitly named businesses in the case at bar.

In sum, we agree with the First and Eleventh Circuits that when considering the ACCA we are not required to "wear blinders" or to cast logic aside "merely because [a defendant]

---

[7]Moreover, the items Foster removed from the Corner Market—"cigarettes, beer, and food items"—are classic indicia that the Corner Market was indeed a corner or convenience-store; that is, a small grocery located in a building or structure. J.A. at 52. Still further, rather than being operated in a railroad car or on a river craft, the geographic connotation attached to "Corner Market" indicates that the market is at or near the corner of a fixed location, whether it be the corner of a building or near the corner of an intersection.

conjure[s] up a speculative possibility." *Miller*, 478 F.3d at 52. Rather, "[t]he ACCA is part of the real world, and courts should not refuse to apply it because of divorced-from-reality, law-school-professor-type hypotheticals that bear no resemblance to what actually goes on." *Rainer*, 616 F.3d at 1216. As we concluded with respect to the "business" in *Shelton*, we find that the indictments' references to the "Sunrise-Sunset Restaurant" and the "Corner Market," in the context of the applicable Virginia statute, ensure that Foster entered buildings or structures and was thus convicted of generic burglary for purposes of the ACCA.

## IV.

The dissenting opinion inaccurately portrays the analysis we perform in this case. Rather than "considering extrinsic 'evidence' that the Government . . . was actually prohibited under *Shepard* from offering," *see post* at 17, we have simply looked to the terms of the relevant state court indictments, which unequivocally indicate that Foster was charged with burglary of the "Sunrise-Sunset Restaurant" and the "Corner Market." Our analysis stops there. We have not looked beyond the indictments for the actual facts of Foster's crimes. As noted earlier, given the burglary options under the Virginia statute, the only logical conclusion from the stated business establishments in the indictments themselves is that those establishments were located in buildings or structures. Although "[w]e may inquire into the facts necessary to a conviction only to the extent they are discernable from the limited set of documents approved in *Shepard* . . . . we need not ignore such facts when they are available in those documents." *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 937 (9th Cir. 2011) (en banc).

Under the approach outlined in the dissenting opinion, an indictment returned in Virginia that charged the burglary of a "McDonald's Restaurant" would not qualify as a violent felony conviction under the ACCA. However, such a burglary

should qualify as a violent felony not just because common sense tells us so, but because the actual words on the page of the *Shepard*-approved document do as well: A defendant who pleads guilty to the burglary of a McDonald's Restaurant, under similar circumstances to this case, necessarily pleads guilty to the burglary of a building or structure. This is the "actual evidence" we require the government to show in order to prove a predicate conviction under *Shepard*-approved documents. It appears that under the logic of the dissenting opinion, without the magical words "building" or "structure" stated in the indictment, or added by the defendant, no amount of "actual evidence" would be enough.

Additionally, while pointing out that the government's burden in this case is "not particularly high," the dissenting opinion suggests that "the Government may easily draft burglary indictments to refer to 'buildings or structures' or otherwise ensure that a defendant admits during his plea colloquy that he did in fact burglarize buildings or structures." *See post* at 17. With respect for the dissent's position, it is neither realistic nor required by the terms of the ACCA. First and foremost, the dissent's position ignores the reality that the vast bulk of ACCA predicate convictions are state convictions. Those state prosecutors and judges rightfully apply the elements of the crime under that state's law for the crime charged, not the ever-changing vagaries of a *federal* sentencing statute. This point is well illustrated by the facts of this case where Virginia charged Foster with the burglaries in 1992, thirteen years before the Supreme Court decided *Shepard*. When the facts for the predicate state convictions are evident on the face of the indictments and indicate that the defendant violated the portion of the relevant statute that proscribes entry into a building or structure, that is all that is required for ACCA purposes. That requirement was met in this case for the reasons stated above.

## V.

Contrary to the dissenting opinion's suggestion, the record here is not "silent." *Cf. post* at 18. The terms of the *Shepard*-

approved documents verify that the factfinder was required to find that Foster committed generic burglary of the Corner Market and the Sunrise-Sunset Restaurant based on the logical options under the Virginia statute. Rather than on a small river craft or in a railroad car, corner markets that sell cigarettes, food, and beer, and restaurants are operated in buildings or structures. Foster's prior convictions therefore necessarily occurred under the first clause of the Virginia statute, which proscribes breaking and entering buildings or structures, and thus qualify as violent felonies under the ACCA. For these reasons, we vacate Foster's sentence and remand the case to the district court for resentencing.

*VACATED AND REMANDED*

HAMILTON, Senior Circuit Judge, concurring:

I concur in Judge Agee's thorough and convincing opinion. I write separately to make three observations concerning the use of common sense in ACCA cases. First, there is nothing truly remarkable about the use of common sense in ACCA cases. The Supreme Court certainly has countenanced such use, *cf. James v. United States*, 550 U.S. 192, 208 (2007) (noting that the ACCA does not require "that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony"), and even the dissent implicitly acknowledges this fact, *see post* at 13-14 ("I don't disagree with the majority's assertion that courts are permitted to draw reasonable inferences from the underlying judicial records when considering whether prior convictions qualify" under the ACCA).

Second, leaving our common sense at the front door makes little sense in examining court documents in ACCA cases. For example, what if the Virginia state court documents reflected

that Foster was convicted of breaking and entering into an "Outback Steakhouse" or a "Wawa"? Under the dissent's interpretation of *Shepard*, a district court would be precluded from using such a conviction because the documents themselves do not prove to an absolute certainty that every Outback Steakhouse or Wawa is affixed to the ground. As the dissent sees it, our common sense cannot step in and tell us what we already know because there is an infinitesimally small possibility that there is some Outback Steakhouse or Wawa floating on a river somewhere in a far-off land. With all due respect to my esteemed colleague in dissent, interpreting *Shepard* in this manner makes little sense, and it is incongruous to the admonition from the Supreme Court that the "ACCA does not require metaphysical certainty." *James*, 550 U.S. at 207. Our common sense neither is an outside evidentiary source that is prohibited by *Shepard* nor is our use of it going to create a trial within a trial in ACCA cases. As Judge Agee recognizes, the use of common sense simply guides us in discerning what the "actual words" in the *Shepard*-approved documents mean. *Ante* at 11. It is unimaginable that the Supreme Court would frown upon such use.

Finally, the dissent implies that the use of common sense "replace[s the district court's] fact-finding with our own." *Post* at 15. The use of common sense is not the equivalent of fact-finding. The standard of review in ACCA cases is *de novo*, *United States v. Thompson*, 421 F.3d 278, 280-81 (4th Cir. 2005), and the use of common sense here is the same common sense courts routinely employ in determining the meaning of a state or federal statute.

---

WYNN, Circuit Judge, dissenting:

I don't disagree with the majority's assertion that courts are permitted to draw reasonable inferences from the underlying judicial records when considering whether prior convictions

qualify under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). Perhaps it is even true that logic and common sense support the majority's determination that the Corner Market and Sunrise-Sunset Restaurant burglarized by this defendant are indeed "buildings or structures affixed to the land." But this type of judicial intervention is neither warranted nor permitted in this case.

The Supreme Court has plainly stated that for the ACCA to apply, the Government is held to the "demanding requirement" of "a showing that a prior conviction '*necessarily*' involved (and a prior plea *necessarily admitted*) facts equating to generic burglary." *Shepard v. United States*, 544 U.S. 13, 24 (2005) (emphases added). Logic, common sense, and reasonable inferences in the absence of actual evidence are simply insufficient to meet this burden. I must therefore respectfully dissent.

In *Shepard*, the Supreme Court emphasized that its opinion in *Taylor v. United States*, 495 U.S. 575 (1990), had established only a narrow exception to the general rule that the ACCA prohibits a later court "from delving into particular facts disclosed by the record of conviction." *Shepard*, 544 U.S. at 17 (citing the holding from *Taylor*, 495 U.S. at 602). *Shepard* leaves no doubt that even under that exception, a later court is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial *record* of this information." *Id.* at 26 (emphasis added). By contrast, if "the *record* is silent on the generic element, there being no plea agreement or recorded colloquy *in which [the defendant] admitted the generic fact*," the ACCA may not be applied. *Id.* at 25 (emphases added).

Significantly, the Supreme Court explicitly rejected in *Shepard* a broader evidentiary inquiry into the facts underlying a conviction, noting that Congress was free to amend the

ACCA if it desired such a wider view. *Id.* at 23. Likewise, the narrow approach outlined in *Taylor* and *Shepard* is critical to avoiding Sixth Amendment challenges to increases in sentences under the ACCA. *See id.* at 25-26 ("The rule of reading statutes to avoid serious risks of unconstitutionality counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea, just as *Taylor* constrained judicial findings about the generic implication of a jury's verdict." (internal citation omitted)); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be . . . proved beyond a reasonable doubt.").

Here, the district court concluded that Defendant's burglary convictions for breaking and entering into the Corner Market and the Sunrise-Sunset Restaurant could be found not to have taken place into buildings or structures. Given the majority's position to the contrary, reasonable minds may obviously disagree concerning the facts underlying Defendant's convictions. As such, it is self-evident that there has been no "showing that a prior conviction '*necessarily*' involved (and a prior plea *necessarily admitted*) facts equating to generic burglary." *Shepard*, 544 U.S. at 24 (emphases added). I see no reason why this Court's common sense should be more reliable than that of a capable district court judge, or why we should replace his fact-finding with our own.[1] *See United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004) ("In our deference to fact-finding, we also give 'due weight to inferences drawn from those facts by resident judges.'" (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996))).

---

[1]The concurring opinion observes that "[t]he use of common sense is not the equivalent of fact-finding." *Ante* p. 13. Perhaps true, but the majority's holding that its common sense is somehow more correct than that of the district court certainly begs the question of just how "common" this "common sense" is.

Nor do I see a need for this Court to stray from long-established principles concerning the interpretation of the ACCA by interjecting the terms "common sense," "logic," or "reasonable inferences" into the list of official judicial records that would meet the "demanding requirement" established in *Shepard*. Indeed, we have recently observed that one of the "animating purposes" of *Shepard* is to "avoid extensive litigation about prior convictions at sentencing," including to "mitigate any Sixth Amendment problems that lurk in the modified categorical approach and judicial fact-finding." *United States v. Washington*, 629 F.3d 403, 409-10 (4th Cir.), *cert. denied*, ___ S. Ct. ___, 2011 WL 4530519 (2011); *see also Taylor*, 495 U.S. at 601 ("[T]he practical difficulties and potential unfairness of a factual approach are daunting.").

In *Washington*, this Court reiterated that our own precedent recognizes that *Shepard* prohibits courts from looking to "sources that would allow them to 'rely on facts neither inherent in the conviction nor admitted by the defendant.'" *Id.* at 410 (quoting *United States v. Alston*, 611 F.3d 219, 226 (4th Cir. 2010), and citing *United States v. Bethea*, 603 F.3d 254, 259 (4th Cir. 2010)). "As a result, any ACCA enhancement stems only from information about the nature of a conviction that has passed through Sixth Amendment filters: charging documents and jury instructions that indicate what the government must have proved, factual findings to which the defendant consented, and so forth." *Washington*, 629 F.3d at 410.

The burden on the Government is not particularly high. *See United States v. Harcum*, 587 F.3d 219, 222 (4th Cir. 2009) ("The Government bears the burden of proving an ACCA predicate offense by a preponderance of the evidence."). However, *Shepard* limits the Government to the evidence contained in judicial records to meet that burden. *See, e.g.*, *Bethea*, 603 F.3d at 259-60 (vacating and remanding an ACCA sentencing enhancement because even though the "most plausible explanation" or common use of the term "escape" might indicate the defendant acted violently, the

*Shepard*-approved documents did not "necessarily" show the violent conduct required under the ACCA). Again, doing so is not especially difficult, as the Government may easily draft burglary indictments to refer to "buildings or structures" or otherwise ensure that a defendant admits during his plea colloquy that he did in fact burglarize buildings or structures. The Government failed to meet its burden in this case.

Nonetheless, the majority holds that "[t]he more-than-remote possibility that a restaurant or Corner Market could be conducted in a railroad car or on a river craft should not undermine the compelling conclusion that [Defendant's] convictions were for the burglaries of buildings or structures." *Ante* p. 8-9. Yet, in the absence of any actual evidence to support this so-called "compelling conclusion," it ultimately constitutes mere speculation that falls far outside the bounds of *Shepard* and its "demanding requirement" that the prior conviction "*necessarily* involved . . . facts equating to generic burglary." 544 U.S. at 24 (emphasis added).

This conjecture leaves us in the untenable position of an appellate court considering extrinsic "evidence" that the Government acknowledged at oral argument that it was actually prohibited under *Shepard* from offering at Defendant's sentencing. None of the judicial records pertaining to Defendant's prior convictions contain any allegation that the Corner Market or the Sunrise-Sunset Restaurant are buildings or structures; they are referred to only by their proper names. Indeed, nothing in the record either proves or disproves that those establishments are located in buildings or structures, or that Defendant "necessarily admitted" to those facts as part of his guilty plea. If not from these judicial records, where then did the majority obtain its "evidence" that the Sunrise-Sunset Restaurant and the Corner Market are buildings?[2]

---

[2]In fact, the majority's statement that "[a] defendant who pleads guilty to the burglary of a McDonald's Restaurant, under similar circumstances to this case, necessarily pleads guilty to the burglary of a building or struc-

The "common-sense approach" adopted by the majority essentially shifts the burden of proof from the Government to Defendant. However, in the face of a silent record, *Shepard* requires that we find the ACCA and its mandatory fifteen-year sentence to be wholly inapplicable, rather than seek to find facts and allow the Government to meet its burden through reasonable inference and speculation in the absence of actual evidence. *See Evans–Smith v. Taylor*, 19 F.3d 899, 908 n.22 (4th Cir.) ("While all inferences must be made in favor of the prosecution, leaps of logic should not be."), *cert. denied*, 513 U.S. 919 (1994); *see also United States v. Aguila-Montes de Oca*, 655 F.3d 915, 935-37 (9th Cir. 2011) (repeatedly emphasizing that "the factual basis for the defendant's conviction" is "determined by looking at the limited universe of *Shepard* documents" and that "a court must exercise cau-

---

ture" illustrates perfectly the danger of such speculation based only on common sense or logic. *Ante* p. 11. Notably, it is not apparent what "similar circumstances" would render the *per se* determination that a McDonald's Restaurant is a building for purposes of invoking the ACCA. Without some extrinsic knowledge of the circumstance of location in this case or another, it could well fit within the description of the McDonald's Restaurant that operated out of a riverboat in Saint Louis for twenty years. *See* http://www.yelp.com/biz/mcdonalds-riverboat-st-louis (last visited Nov. 10, 2011); http://www.flickr.com/photos/tom-margie/2864343408/lightbox/ (last visited Nov. 10, 2011).

But *Shepard* prohibits the use of extrinsic evidence in conducting an ACCA analysis. Likewise, *Shepard* prohibits the use of conjecture based on our own individualized notions of where a restaurant or store may be located. And that prohibition applies whether the restaurant is named McDonald's or Padow's.

The concurring opinion's hypothetical scenario involving an Outback Steakhouse or a Wawa is beside the point; this case concerned two presumably local establishments. Given that a conviction in any state may be used for purposes of an ACCA enhancement, would the majority likewise feel comfortable determining—without resort to extrinsic evidence such as a map or personal knowledge—that the "Sunrise-Sunset Restaurant" in Maui is definitively located in a building or structure? And yet, under the majority's holding today, that will be the law in this Circuit.

tion in determining what facts a conviction 'necessarily rested' on. . . . It is not enough that an indictment merely allege a certain fact or that the defendant admit to a fact; the fact must be *necessary* to convicting that defendant.").

Contrary to the majority's assertion, this is not some "divorced-from-reality, law-school-professor-type hypothetical[ ] that bear[s] no resemblance to what goes on." *Ante* p. 10 (quoting *United States v. Rainer*, 616 F.3d 1212, 1216 (11th Cir. 2010), *cert. denied*, 131 S. Ct. 968 (2011)). This is the difference between a sentence of twenty-seven *months* in prison and one of fifteen *years* in prison. To impose that sort of criminal penalty, the Government simply must show more than the possibility, based solely on common sense and logic, that Defendant's prior convictions *may* qualify under ACCA. The Supreme Court has clearly held that Defendant *must* have *necessarily admitted* elements of the generic offense. For the foregoing reasons, I respectfully dissent.