**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-2484

DANIEL JORGE CASTENDET-LEWIS,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: January 24, 2017                    Decided: April 25, 2017

Before GREGORY, Chief Judge, KING, Circuit Judge, and DAVIS, Senior Circuit Judge.

Petition for review granted; vacated and remanded by published opinion. Judge King wrote the opinion, in which Chief Judge Gregory and Senior Judge Davis joined.

**ARGUED**: Michael Robert Huston, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Petitioner. Manuel Alexander Palau, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF**: Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Terri J. Scadron, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

KING, Circuit Judge:

After pleading guilty to a statutory burglary offense in Virginia, Daniel Jorge Castendet-Lewis — a native of Panama admitted to the United States on a B-2 visitor visa in 2007 — was subjected to so-called "expedited removal proceedings." The Department of Homeland Security (the "DHS") initiated those proceedings because Castendet was not lawfully admitted to this country for permanent residence and his burglary offense is, in the DHS's view, an aggravated felony for purposes of immigration law. Castendet unsuccessfully sought review in the immigration court of the DHS's aggravated felony determination, petitioned for our review, and then was removed to Panama. Following the DHS's subsequent cancellation of Castendet's removal order, the Attorney General moved in this Court to dismiss Castendet's petition for review. As explained below, we stand by a prior panel ruling denying the Attorney General's motion to dismiss, and we grant Castendet's petition for review, vacate the DHS's order of removal, and remand.

I.

A.

Castendet was born in Panama on February 4, 1994.[1] He grew up in Colon, where criminal activities were a substantial part of his life. Castendet's father, Jorge Daniel

---

[1] The facts recited herein are largely drawn from Castendet's hearing testimony, which was deemed credible in the immigration court.

2

Castendet Marcia, was a police officer in the Noriega government. Marcia physically and psychologically abused Castendet, as well as other members of the family. Marcia also trafficked in drugs, accepted bribes, and provided weapons for illegal gangs. One of Castendet's brothers, Jorge Wilkerson, regularly joined his father in illegal pursuits that included drug trafficking.

Although Marcia did not live with Castendet, various associates of Marcia and Wilkerson — including corrupt police officers and members of a gang called the Cold Coffin Kids — were frequent visitors at Castendet's family home. They often came there to retrieve items containing illegal drugs. During such visits, Marcia and Wilkerson's criminal associates occasionally threatened Castendet and other family members. On one occasion, corrupt officers seized tires that Wilkerson had stored on the house balcony — tires that Castendet believed to contain drugs. Those officers threatened to harm Castendet and his family if they divulged what had occurred. Another time, a corrupt officer came to the home seeking electronic speakers in which Wilkerson had concealed drugs. When Castendet told the officer that Wilkerson had removed the speakers from the house, the officer threatened to hurt Castendet.

In 2006, the Cold Coffin Kids shot and killed one of Castendet's friends, a boy named Jack, while the pair were together walking home from school. Castendet believes that the gang killed Jack because Jack knew of the gang's activities from staying at

3

Castendet's house.  The Cold Coffin Kids left Castendet unharmed, but warned him that he "did not see anything, or else."  *See* A.R. 268.[2]

On April 3, 2007, thirteen-year-old Castendet — along with his mother and younger brother — fled Panama and entered the United States on B-2 visitor visas.[3]  For nearly six years, Castendet did well in this country by attending school, joining a church, and spending time with more upstanding family members.  Even here, however, criminal elements came to permeate Castendet's life.  When Castendet was eighteen years old, on January 18, 2013, two of his friends — Ryan Rice and Malik Best — broke into the home of a Mrs. McCree in Newport News, Virginia.  After pilfering several items, including Nike shoes and three watches, Rice and Best came to Castendet's home to conceal the stolen goods.  The pair "told [Castendet] to come with them" and "see how [McCree] is living."  *See* A.R. 668.  After first declining to accompany Rice and Best to McCree's house, Castendet gave in to the peer pressure.  He went with his friends to McCree's home and waited while Rice and Best went inside.  At some point, Castendet also entered the McCree home and Rice stole a Dell laptop computer from it.

In early 2013, Castendet was arrested and indicted in Newport News for grand larceny and statutory burglary.  On July 9, 2013, he pleaded guilty to the statutory

---

[2] Citations herein to "A.R. __" refer to the contents of the Administrative Record filed by the parties in this matter.

[3] A B-2 visitor visa entitles an alien to enter this country for tourism, pleasure, or visiting.  Castendet thus entered the United States lawfully but overstayed his B-2 visitor visa.

burglary offense. *See* Va. Code § 18.2-91. Pursuant to his plea agreement with the state prosecutor, the grand larceny charge was dismissed. Two months later, on September 4, 2013, the state court sentenced Castendet to five years in prison with all five years suspended, essentially a sentence of time served.

B.

On September 6, 2013, two days after Castendet was sentenced, the DHS initiated its expedited removal proceedings against him. Those proceedings were conducted under 8 U.S.C. § 1228(b), which provides for the expedited removal of an alien not lawfully admitted for permanent residence who has been convicted of an aggravated felony as explained in 8 U.S.C. § 1227(a)(2)(A)(iii). The DHS contended that Castendet was subject to expedited removal because his Virginia statutory burglary offense qualifies as an aggravated felony. That same day, the DHS issued Castendet a Final Administrative Removal Order (the "Removal Order").

Castendet subsequently requested and received what is called a "reasonable fear interview." Following that interview, an asylum officer determined that Castendet possessed a reasonable fear of persecution or torture if he was removed to Panama. In January 2014, the asylum officer referred the matter to an immigration judge (an "IJ") for a withholding-only proceeding. Castendet then filed applications for asylum, withholding of removal, and protection under the Convention Against Torture (the "CAT"). He contended therein that the DHS's Removal Order was improper, in that his Virginia statutory burglary offense is not an aggravated felony under § 1227(a)(2)(A)(iii).

5

On August 4, 2014, the IJ denied Castendet's applications for withholding of removal and protection under the CAT. The IJ also concluded that he lacked jurisdiction to consider Castendet's asylum application. Additionally, the IJ deemed himself unauthorized to assess Castendet's challenge to the DHS's categorization of his burglary offense as an aggravated felony. *See Etienne v. Lynch*, 813 F.3d 135, 138 (4th Cir. 2015) (concluding that alien in expedited removal proceedings can challenge legal basis for removal in appropriate court of appeals only).

Castendet promptly appealed to the Board of Immigration Appeals (the "BIA"). On January 26, 2015, the BIA ruled that Castendet was not entitled to challenge the legal basis of his removal — i.e., whether his burglary offense qualifies as an aggravated felony — because he had been placed in expedited removal proceedings. The BIA also agreed that the IJ lacked jurisdiction to consider Castendet's asylum application, but remanded for further consideration of Castendet's requests for withholding of removal and CAT protection.

At the conclusion of the remand proceedings, on June 22, 2015, a different IJ denied Castendet withholding of removal and CAT relief. Castendet again appealed to the BIA, which on October 27, 2015, again affirmed. On November 25, 2015, Castendet petitioned for our review, and he was thereafter removed to Panama. We possess jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).[4]

---

[4] Although Castendet has already been removed to Panama, he is entitled to review in a court of appeals. *See Carachuri-Rosendo v. Holder*, 560 U.S. 563, 573 n.8 (2010).

C.

On June 17, 2016, six months after removing Castendet to Panama, the DHS cancelled his Removal Order.[5] Three days later, the Attorney General moved to dismiss Castendet's petition for review, making two contentions. The Attorney General first argued that cancellation of the Removal Order negated the "statutory basis for this Court's exercise of jurisdiction." *See* Motion to Dismiss, *Castendet-Lewis v. Sessions*, No. 15-2484, at 5 (4th Cir. June 20, 2016), ECF No. 23. Next, he contended that a regulatory provision — § 238.1(d)(2)(iii) of Title 8 of the Code of Federal Regulations — vested the DHS with the authority to cancel the Removal Order.

Castendet opposed dismissal, contending that the DHS "does not have the authority to cancel a final administrative removal order" for the purpose of defeating the jurisdiction of a court of appeals. *See* Response in Opposition, *Castendet-Lewis v. Sessions*, No. 15-2484, at 1 (4th Cir. July 15, 2016), ECF No. 28. Castendet argued that we should reject the Attorney General's "transparent attempt to avoid judicial review in this case." *Id.* at 2. He urged us to adhere to an approach taken by the Third Circuit, which recently rejected similar efforts by the DHS to cancel removal orders and then have those cancellations used by the Attorney General to seek dismissal of petitions

---

[5] The DHS's cancellation of the Removal Order followed our denial of the Attorney General's motion to remand. The Attorney General had moved for a remand to the DHS for consideration of new authorities pertaining to whether Castendet's statutory burglary offense qualifies as an aggravated felony. We denied the Attorney General's motion. *See* Order, *Castendet-Lewis v. Sessions*, No. 15-2484 (4th Cir. May 13, 2016), ECF No. 21. The Attorney General has not renewed the motion to remand.

under review in that court of appeals. *See Walker v. Att'y Gen.*, 625 F. App'x 87, 89 (3d Cir. 2015); *Rodriguez-Celaya v. Att'y Gen.*, 597 F. App'x 79, 81 (3d Cir. 2015).

In September 2016, we denied the Attorney General's motion to dismiss the petition for review, observing that "we find no authority that would allow the DHS to cancel a final administrative removal order under the circumstances presented in this case." *See* Order, *Castendet-Lewis v. Sessions*, No. 15-2484, at 2 (4th Cir. Sept. 6, 2016), ECF No. 30 (the "Order Denying Dismissal"). The Attorney General nevertheless renewed his dismissal request in his response brief.

## II.

We first assess — and deny — the Attorney General's renewed motion to dismiss. We then proceed to the merits of Castendet's petition for review, which contends that his burglary offense is not an aggravated felony. Because we agree with Castendet's contention, we grant the petition.[6]

## A.

We begin with the Attorney General's renewed request for dismissal of the petition for review. The premise of that request is that we cannot review the Removal Order because the DHS has cancelled it. In his initial motion to dismiss, the Attorney

---

[6] By his petition for review, Castendet also asserts that both the IJ and the BIA erroneously determined that he is not entitled to withholding of removal or CAT protection. We need not reach or address those issues today. *See Sotnikau v. Lynch*, 846 F.3d 731, 735 n.2 (4th Cir. 2017).

General raised only two contentions in support of dismissal — that we lack jurisdiction to review a removal order cancelled by the DHS, and that § 238.1(D)(2)(iii) of Title 8 of the Code of Federal Regulations authorizes the DHS to cancel a removal order. The Attorney General now advances a total of five grounds for dismissal, including the two we already rejected. His three new arguments are that the DHS has prosecutorial discretion to cancel a removal order, the DHS has inherent authority to cancel a removal order, and Castendet's petition for review is moot in the absence of a removal order.

1.

We need only address one of the Attorney General's restated contentions. We do not reconsider the ruling of our Order Denying Dismissal that § 238.1(D)(2)(iii) fails to authorize the DHS to cancel the Removal Order, as that ruling is the law of the case. *See United States v. Rosen*, 557 F.3d 192, 199 (4th Cir. 2009) (explaining that earlier legal ruling is binding through all subsequent stages of proceeding). We again assess the Attorney General's jurisdictional contention, however, because the law of the case doctrine does not bar us "from revisiting a prior ruling of a motion panel on the Court's jurisdiction." *See CNF Constructors, Inc. v. Donohoe Const. Co.*, 57 F.3d 395, 397 n.1 (4th Cir. 1995).

The Attorney General maintains that we lack jurisdiction because a final order of removal does not exist. Our jurisdiction stems from 8 U.S.C. § 1252(a)(1), which provides that a court of appeals may review "a final order of removal." According to the Attorney General, the DHS's cancellation of the Removal Order rendered the Removal Order nonexistent and unreviewable. That proposition, however, ignores the facts in

9

these proceedings.  The DHS removed Castendet pursuant to the Removal Order, as to which he then sought review.  We possessed § 1252(a)(1) jurisdiction when Castendet filed his petition for review.  The DHS thereafter cancelled the Removal Order.  We know of no authority of the DHS — and none has been presented here — to strip us of jurisdiction in a pending case simply by writing "cancelled" on a removal order the DHS has used to remove an alien.[7]

2.

Next, we address only one of the Attorney General's three new contentions.  He has waived two of those arguments by not timely raising them in the motion to dismiss: that the DHS has both the prosecutorial discretion and the inherent authority to cancel a removal order.  We nevertheless address the Attorney General's mootness contention — even though not raised in the motion to dismiss — because "the question of whether we are presented with a live case or controversy is a question we may raise *sua sponte* since mootness goes to the heart of the Article III jurisdiction of the courts."  *See Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) (internal quotation marks omitted).

---

[7] The decisions relied on by the Attorney General for the proposition that we lack jurisdiction are readily distinguishable.  In *Aguilar-Aguilar v. Napolitano*, the Tenth Circuit ruled that it could not review the DHS's decision to terminate removal proceedings and institute expedited proceedings because the IJ's decision did not result in a final order of removal.  *See* 700 F.3d 1238, 1243 (10th Cir. 2012).  Similarly, in *Galindo-Romero v. Holder*, the Ninth Circuit dismissed the petition for review for lack of jurisdiction because the challenged decisions did not result in an order of removal.  *See* 640 F.3d 873, 877 (9th Cir. 2011).

10

The Attorney General maintains that the DHS's cancellation of the Removal Order has mooted this matter because Castendet is no longer subject to removal. We disagree for two sound reasons. First, the DHS's classification of Castendet as an aggravated felon spawns collateral consequences unrelated to the Removal Order. *See Smith v. Ashcroft*, 295 F.3d 425, 428 (4th Cir. 2002) ("[T]hough [the petitioner] is no longer in the United States, he is unmistakably affected by the legal implications of our decision. If he prevails, there is a possibility he can beneficially unravel his untoward immigration status."). For example, Castendet's status as an aggravated felon could preclude him from ever receiving permission to reenter the United States. *See United States v. Madrigal-Valadez*, 561 F.3d 370, 373-74 (4th Cir. 2009) (rejecting mootness argument because conviction could impact petitioner's ability to reenter).

Second, this proceeding has not been mooted because the DHS's conduct under challenge could be repeated. If Castendet reentered the United States, the DHS could recommence its removal proceedings, likely on the premise that he is an aggravated felon. The Attorney General has not foreclosed the possibility of the DHS later reasserting that Castendet is an aggravated felon. *See Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014) ("It is well established that a defendant's voluntary cessation of a challenged practice moots an action only if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." (internal quotation marks omitted)). We therefore decline to dismiss Castendet's petition on mootness grounds, and the Removal Order yet exists.

11

B.

Turning to the merits of Castendet's petition for review, the dispositive issue is whether the offense of statutory burglary in Virginia constitutes an aggravated felony for purposes of immigration law. Whether a crime is an aggravated felony is a question of law that we review de novo. *See Mbea v. Gonzales*, 482 F.3d 276, 279 (4th Cir. 2007).

1.

Castendet's Removal Order is predicated on 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." An "aggravated felony" includes, inter alia, a "burglary offense for which the term of imprisonment [is] at least one year." *See* 8 U.S.C. § 1101(a)(43)(G).

To determine whether a state offense qualifies as an aggravated felony, we generally utilize the "categorical approach" described by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and *Descamps v. United States,* 133 S. Ct. 2276 (2013). *See Omargharib v. Holder*, 775 F.3d 192, 196 (4th Cir. 2014). Under the categorical approach, we will consider only the elements of the offense of conviction, not the underlying conduct. *Id.* If the offense of conviction has the same elements as the generic federal offense, then the offense of conviction qualifies as an aggravated felony. *Id.* But, if the offense of conviction "sweeps more broadly and criminalizes more conduct than the generic federal crime," then the offense of conviction is not an aggravated felony — even if the defendant actually committed that offense in its generic form. *Id.* (internal quotation marks omitted).

12

The Attorney General contends, however, that Virginia statutory burglary is a "divisible offense," requiring us to apply the "modified categorical approach." The modified categorical approach "helps implement the categorical approach when a defendant was convicted of violating a divisible statute." *See Descamps*, 133 S. Ct. at 2285. To that end, the modified categorical approach applies only when a statute is divisible, i.e., when it "sets out one or more elements of the offense in the alternative," *id.* at 2281, and "so effectively creates several different . . . crimes," *id.* at 2285 (alteration in original) (internal quotation marks omitted). As Justice Kagan explained in *Descamps*, if one of the alternative elements

> matches an element in the generic offense, but the other . . . does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction.

*Id.* at 2281. In such a situation, the reviewing court can then compare the elements of the offense of conviction with the elements of the generic crime. The court is not entitled, however, to apply the modified categorical approach to an indivisible statute — that is, a statute that does not contain alternative elements.

Just last year, in *Mathis v. United States*, the Supreme Court explained that "elements are the constituent parts of a crime's legal definition — the things the prosecution must prove to sustain a conviction." *See* 136 S. Ct. 2243, 2248 (2016) (internal quotation marks omitted). An element is, in other words, "what the jury must find beyond a reasonable doubt to convict the defendant" and "what the defendant necessarily admits when he pleads guilty." *Id.* Facts, on the other hand, "are mere real-

13

world things — extraneous to the crime's legal requirements." *Id.* Facts "are circumstance[s] or event[s] having no legal effect [or] consequence." *Id.* (alterations in original) (internal quotation marks omitted). Statutes that "enumerate[] various factual means of committing a single element," rather than statutes that "list[] multiple elements disjunctively," are indivisible. *Id.* at 2249.

2.

Applying the Supreme Court's directives in *Descamps* and *Mathis*, it is clear that the Virginia burglary statute is indivisible. The statute proscribes the following conduct:

(1) Committing "any of the acts mentioned in § 18.2-90 with intent to commit larceny, or any felony other than murder, rape, robbery or arson"; or

(2) Committing "any of the acts mentioned in § 18.2-89 or § 18.2-90 with intent to commit assault and battery."

*See* Va. Code § 18.2-91. Section 18.2-91 incorporates section 18.2-90, which cannot be divided into alternative elements. Section 18.2-90 penalizes any person who, with the intent to commit murder, rape, robbery, or arson,

(1) In the nighttime enters without breaking a dwelling house or an adjoining, occupied outhouse;

(2) In the daytime breaks and enters a dwelling house or an adjoining, occupied outhouse;

(3) Enters and conceals himself in a dwelling house or an adjoining, occupied outhouse; or

(4) In the nighttime enters without breaking, or at any time breaks and enters or enters and conceals himself in, any of the following locations:

- Any building permanently affixed to realty;

14

- Any ship, vessel or river craft;

- Any railroad car; or

- Any automobile, truck or trailer, if that automobile, truck or trailer is used as a dwelling or place of human habitation.

*See* Va. Code § 18.2-90.[8]

Put more simply, section 18.2-90 identifies four means of committing the requisite entry to sustain a statutory burglary conviction: (1) entering without breaking in the nighttime; (2) breaking and entering in the daytime; (3) entering and concealing oneself in a dwelling house or an adjoined, occupied outhouse at any time; or (4) entering without breaking in the nighttime, or at any time breaking and entering or entering and concealing oneself in a number of non-house locations. *See* Va. Code § 18.2-90. The foregoing are four distinct factual means of describing how the statutory offense of burglary can be committed — rather than different elements — because the Virginia courts analyze them interchangeably. *See Mathis*, 136 S. Ct. at 2256 (explaining that court decisions are relevant to determining divisibility). For example, in *Finney v. Commonwealth*, the Supreme Court of Virginia analyzed how an entry is accomplished. *See* 671 S.E.2d 169, 172 (Va. 2009). Observing that the burglary of an affixed shed had allegedly occurred in the daytime rather than in the nighttime, the state supreme court

_____

[8] Section 18.2-91 of the Virginia Code also incorporates section 18.2-89, which penalizes any person who "break[s] and enter[s] the dwelling house of another in the nighttime with intent to commit a felony or other larceny therein." *See* Va. Code § 18.2-89. Section 18.2-89 therefore corresponds with the generic federal crime of burglary. *See Taylor v. United States*, 495 U.S. 575, 598 (1990).

15

then assessed whether the defendant had committed a breaking, as required by section 18.2-90. *Id.*; *see also Scott v. Commonwealth*, 636 S.E.2d 893, 896-97 (Va. Ct. App. 2006) (implying that Commonwealth can charge defendant generally with statutory burglary).

Of additional importance, the indictment against Castendet charged alternative factual means of committing statutory burglary, thereby belying the Attorney General's contention that the Virginia burglary statute is divisible. Specifically, the indictment alleged that Castendet "feloniously did enter in the nighttime without breaking *or* at any time did break and enter *or* enter and conceal himself in a building permanently affixed to realty belonging to [Mrs. McCree]." *See* A.R. 541 (emphasis added); *see also Mathis*, 136 S. Ct. at 2257 (explaining that where an indictment lists alternative terms in lieu of selecting one term, the indictment provides "as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove"); *Descamps*, 133 S. Ct. at 2290 ("A prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives.").[9] We are therefore satisfied that the Virginia burglary statute is indivisible.

---

[9] Furthermore, Virginia's model jury instructions illustrate that the offense of statutory burglary can be committed in various ways:

> **The defendant is charged with the crime of statutory burglary. The Commonwealth must prove beyond a reasonable doubt both of the following elements of that crime:**
>
> (1) **That the defendant** without permission [in the nighttime entered without breaking; in the daytime broke and entered;

(Continued)

16

3.

The Attorney General nevertheless contends that our decision in *United States v. Foster* — decided five years prior to the Supreme Court's decision in *Mathis* — requires a different result. *See United States v. Foster*, 662 F.3d 291 (4th Cir. 2011), *reh'g denied*, 674 F.3d 391 (4th Cir. 2012). In *Foster*, we ruled that the Virginia burglary statute was divisible — and thus, under the facts of that case, a violent felony under the Armed Career Criminal Act — as to the locational aspect of the statute. We explained that courts "normally may look only to the statutory elements of an offense and the fact of the conviction." *Id.* at 293. But, "because some statutes (like the Virginia provisions at issue here) define burglary broadly enough to encompass enclosures other than a building or structure, the categorical approach may permit the sentencing court to go beyond the mere fact of conviction in certain cases." *Id.* (internal quotation marks omitted). The parties in *Foster* agreed that, "because the applicable Virginia statute is broader than generic burglary as defined by the Supreme Court in *Taylor*, we should review [pertinent] documents to determine whether a plea of guilty to burglary defined by

in the daytime entered and concealed himself in] [a dwelling house; a building permanently affixed to realty]; **and**

(2)  **That he did so with the intent to commit** [murder; rape; robbery; arson].

*See* Criminal Jury Instructions for Virginia, No. G12.200 (2015); *see also Mathis*, 136 S. Ct. at 2257 (noting that jury instructions are relevant to determining whether listed items constitute alternative means or elements of offense); *Omargharib*, 775 F.3d at 199-200 (same).

17

a non-generic statute necessarily admitted elements of the generic offense." *Id.* (internal quotation marks omitted).

Our approach in *Foster*, however, does not survive the Supreme Court's decision in *Mathis*. There, the Supreme Court used the example of a statute with an element requiring the use of a deadly weapon. The hypothetical statute "provide[d] that the use of a knife, gun, bat, or similar weapon would all qualify." *See Mathis*, 136 S. Ct. at 2249 (internal quotation marks omitted). According to the Court, "[b]ecause that kind of list merely specifies diverse means of satisfying a single element of a single crime — or otherwise said, spells out various factual ways of committing some component of the offense — a jury need not find (or a defendant admit) any particular item." *Id.* In fact, "[t]he itemized construction gives a sentencing court no special warrant to explore the facts of an offense, rather than to determine the crime's elements and compare them with the generic definition." *Id.* at 2251.

So too with section 18.2-91 of the Virginia Code, which incorporates section 18.2-90's enumeration of various ways of committing the locational aspect of Virginia's statutory burglary offense. In *Foster*, the parties agreed to review documents to consider whether the defendant had committed the generic version of Virginia statutory burglary by breaking and entering a building or structure. Post-*Mathis*, however, it is clear that the locational aspect of section 18.2-90 enumerates "diverse means of satisfying a single element of a single crime." *See Mathis*, 136 S. Ct. at 2249. Our conclusion stems from the clear language of section 18.2-90, which provides a list of locations — each of which would qualify as an element of statutory burglary. *See* Va. Code § 18.2-90 (providing

18

that statutory burglary can occur when person "enters and conceals himself in any building permanently affixed to realty, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation"). Moreover, the Supreme Court of Virginia appears to view the locational terms of section 18.2-90 interchangeably. In *Graybeal v. Commonwealth*, the defendant was convicted of statutory burglary after he broke into twelve trailers that were used by a mobile home seller as models. *See* 324 S.E.2d 698, 699 (Va. 1985). After concluding that the burgled trailers were not "used as a dwelling or place of human habitation," as required by section 18.2-90, the Supreme Court of Virginia went on to assess whether the defendant had burgled any of the other structures named by section 18.2-90. *Id.* at 700. To sustain a conviction, neither the court nor the jury had to find that a particular structure was broken into — *any* of the enumerated options would have sufficed.

In sum, we are satisfied that the Virginia burglary statute provides different factual means that constitute entry and location — not different elements. The statute thus is not divisible, and application of the modified categorical approach is inappropriate in connection therewith.

4.

In these circumstances, we must assess whether a Virginia statutory burglary constitutes an aggravated felony using the categorical approach. *See Omargharib*, 775 F.3d at 196. As the Attorney General concedes in this proceeding, the Virginia burglary statute is broader than the federal crime of generic burglary. In *Taylor*, the Supreme

19

Court included in its definition of a generic burglary "an unlawful or unprivileged entry" into "a building or other structure," and explained that state burglary statutes that "eliminat[e] the requirement that the entry be unlawful, or . . . includ[e] places, such as automobiles and vending machines, other than buildings," fall outside the definition of generic burglary. *See* 495 U.S. at 598-99. As we noted above, the Virginia burglary statute is satisfied by various alternative means of entry, including one's entry without breaking or one's concealment after lawful entry. By proscribing such conduct, the statute falls outside the scope of generic burglary. The Virginia burglary statute also reaches several places that are not buildings or structures, such as ships, vessels, river craft, railroad cars, automobiles, trucks, and trailers. As the BIA recently recognized, the breadth of the statute means that it falls outside the definition of an aggravated felony. *See In re H-M-F*, __ I. & N. Dec. __ (BIA Mar. 29, 2017). Utilizing the categorical approach, we are also satisfied that the Virginia offense of statutory burglary criminalizes more conduct than the generic federal offense of burglary. The DHS therefore erred in classifying Castendet's conviction as an aggravated felony.

III.

Pursuant to the foregoing, we grant the petition for review, vacate the DHS's Removal Order, and remand for such other and further proceedings as may be appropriate.

*PETITION FOR REVIEW GRANTED;*
*VACATED AND REMANDED*