**REVISED July 5, 2017**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-41270

United States Court of Appeals
Fifth Circuit

**FILED**

June 30, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

JOSE DARWIN REYES-OCHOA,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, JONES, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Defendant Jose Darwin Reyes-Ochoa appeals his 41-month within-Guidelines sentence imposed following his guilty-plea conviction and sentence for illegal reentry after deportation. He contends, for the first time on appeal, that the district court committed reversible plain error by imposing a 16-level "crime of violence" Guidelines enhancement based on his prior Virginia convictions for statutory burglary. In light of *Mathis v. United States*, 136 S.

No. 15-41270

Ct. 2243 (2016), we agree the court plainly erred and exercise our discretion to VACATE Reyes-Ochoa's sentence and REMAND for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Jose Darwin Reyes-Ochoa, a citizen of El Salvador, pled guilty without a plea agreement to being an alien who knowingly and unlawfully entered the United States following deportation, in violation of 8 U.S.C. § 1326(a) and (b). Based on his prior Virginia convictions of statutory burglary, the probation officer applied a 16-level crime-of-violence ("COV") enhancement to Reyes-Ochoa's base offense of 8 under Section 2L1.2(b)(1)(A)(ii) of the 2014 version of the Guidelines.[1] The resulting Guidelines range was 41 to 51 months, and the district court sentenced Reyes-Ochoa to 41 months of imprisonment. Reyes-Ochoa timely appealed.

This case was held pending the issuance of the mandate in *United States v. Membreno-David*, 650 F. App'x 194 (5th Cir. 2016), which was an appeal challenging an 8-level sentencing enhancement the defendant received for a prior Virginia burglary conviction under the same statute at issue here. That opinion was handed down on May 26, 2016, approximately one month before the Supreme Court's decision in *Mathis*. After filing an initial brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), the Federal Public Defender's office filed a merits brief addressing the applicability of the COV enhancement Reyes-Ochoa received in light of *Mathis*.

---

[1] That version of Section 2L1.2(b)(1)(A)(ii) mandates a 16-level increase to a defendant's base offense level when the defendant previously has been deported following "a conviction for a felony that is . . . a crime of violence[.]" The commentary to the Guidelines defines "crime of violence" as (1) any offense in a list of enumerated offenses, including "burglary of a dwelling," or (2) "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). The force clause is not at issue here.

No. 15-41270

DISCUSSION

Because Reyes-Ochoa did not object to the sentencing enhancement in the district court, we review for plain error. *United States v. Hernandez*, 690 F.3d 613, 620 (5th Cir. 2012). To establish plain error, Reyes-Ochoa must show (1) an error; (2) that was clear or obvious; and (3) that affected his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). Evaluating the plainness of an error requires us to consider whether the law is clear or obvious at the time of appellate review. *Henderson v. United States*, 133 S. Ct. 1121, 1124–25 (2013). If Reyes-Ochoa satisfies the first three prongs, we have the discretion to correct the error but only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett,* 556 U.S. at 135 (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

The parties' arguments are straightforward. Reyes-Ochoa asserts that based on *Mathis* and Virginia state law, the Virginia statute underlying his sentencing enhancement, Virginia Code Section 18.2-90,[2] is indivisible — precluding the use of the modified-categorical approach — and does not satisfy the categorical approach because the statute includes offenses broader than generic "burglary of a dwelling." Thus, he contends that his COV enhancement based on his prior Virginia burglary convictions was an error that is plain given *Mathis*'s "clear directions on divisibility." Reyes-Ochoa also argues that the district court's error affected his substantial rights and that we should exercise our discretion to vacate and remand as the sentence seriously affects the fairness, integrity, or public reputation of judicial proceedings.

---

[2] Reyes-Ochoa was convicted under Virginia Code Section 18.2-91, which prohibits committing "any of the acts mentioned in § 18.2-90 with intent to commit larceny," as well as "any felony other than murder, rape, robbery or arson . . . , [or] any of the acts mentioned in § 18.2-89 or § 18.2-90 with intent to commit assault and battery[.]" *See* VA. CODE § 18.2-91.

No. 15-41270

The Government argues there is no error, plain or otherwise, because the Virginia statute is divisible and therefore subject to the modified-categorical approach.  It predominantly relies on *Membreno-David*, where we determined Section 18.2-90 was "divisible as to how the entry is accomplished" and "divisible as to the target of the burglary[.]"  *See Membreno–David*, 650 F. App'x at 196.  The Government also finds support for its position in a 2011 Fourth Circuit decision, which held that the Virginia burglary statute was divisible and subject to the modified-categorical approach.  *See United States v. Foster*, 662 F.3d 291, 293–94 (4th Cir. 2011).

Recognizing that *Foster* predates both *Descamps v. United States*, 133 S. Ct. 2276 (2013),  and *Mathis*, the Government asserts that the Fourth Circuit's decision remains good law even under the current analytical framework based on recent decisions from two Virginia federal district courts.  *See Blackwell v. United States*, No. 4:10-CR-00012, 2016 WL 5849384, at \*4–\*5 (W.D. Va. Oct. 6, 2016); *United States v. Major*, 198 F. Supp. 3d 558, 564–66 (E.D. Va. 2016), *appeal docketed*, No. 16-7279 (4th Cir. Sept. 21, 2016).  Nevertheless, the Government notes that because another district court held differently — that the statute is indivisible post-*Mathis* — any error asserted by Reyes-Ochoa cannot be "clear or obvious."  *See United States v. Gambill*, 214 F. Supp. 3d 544, 548–552 (W.D. Va. 2016).

Recently, the Fourth Circuit issued an opinion regarding the divisibility of Virginia Code Section 18.2-90, which we find particularly helpful to our analysis.  *See Castendet-Lewis v. Sessions*, 855 F.3d 253, 260–64 (4th Cir. 2017).  Before addressing that decision and the parties' arguments regarding plain error, we briefly set forth the *Mathis* framework on divisibility.

4

I.    *Divisibility Under* Mathis

"The analytical method for determining whether a predicate offense merits COV sentencing-enhancement varies by whether the statute for the offense is divisible or indivisible." *United States v. Mendez-Henriquez*, 847 F.3d 214, 218 (5th Cir. 2017). Accordingly, we must first determine whether a statute lists multiple elements disjunctively, or enumerates various factual means of committing a single element. *See Mathis*, 136 S. Ct. at 2249. Where a statute "enumerates various factual means of committing a single element," it is indivisible and the categorical approach should be used; where a statute lists disjunctive elements that create different offenses, the modified-categorical approach should be used. *Id.*

Applying the *Mathis* framework requires us to determine "whether 'listed items' in a statute 'are elements or means.'" *United States v. Hinkle*, 832 F.3d 569, 575 (5th Cir. 2016) (quoting *Mathis*, 136. S. Ct. at 2256). "'Elements' are the 'constituent parts' of a crime's legal definition — the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S. Ct. at 2248 (quoting BLACK'S LAW DICTIONARY (10th ed. 2014)). In other words, they "must be agreed upon by a jury." *Hinkle*, 832 F.3d at 575. Or, as relevant here, "they are what the defendant necessarily admits when he pleads guilty[.]" *Mathis*, 136 S. Ct. at 2248.

Means, on the other hand, are "various factual ways of committing some component of the offense[.]" *Id.* at 2249. As the Court noted, they "are mere real-world things — extraneous to the crime's legal requirements." *Id.* at 2248. "When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense." *Hinkle*, 832 F.3d at 575.

Once it is determined a statute is indivisible, the categorical approach requires courts to compare the elements of the state offense and the "generic"

offense. *Descamps*, 133 S. Ct. at 2281. The Supreme Court has held that "generic burglary" has the following elements: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). Under the relevant framework, if the Virginia offense is broader than "generic burglary" then Reyes-Ochoa's "conviction is not a crime of violence as a matter of law." *See United States v. Fierro-Reyna*, 466 F.3d 324, 327 (5th Cir. 2006).

II.    *Sentencing Error was Clear or Obvious Under* Mathis

As previously noted, we recognize that an error can be "plain and obvious, even though precedent foreclosed it at the time of sentencing," when "the error became clear in light of a decision announced while th[e] case was still on direct appeal." *See United States v. Hornyak*, 805 F.3d 196, 199 (5th Cir. 2015). *Mathis* is such a decision.

Analyzing the Virginia burglary statute in light of *Mathis* requires us to start with the statute's language:

> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any building permanently affixed to realty, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape, robbery or arson . . . he shall be deemed guilty of statutory burglary . . . .

VA. CODE § 18.2-90.

We conclude that the Fourth Circuit in *Castendet-Lewis* used the proper analysis under *Mathis* for Section 18.2-90. That court dealt with a defendant's argument that his Virginia statutory burglary offense should not be

categorized as an "aggravated felony." *See Castendet-Lewis*, 855 F.3d at 255–56. The court determined that "the dispositive issue is whether the offense of statutory burglary in Virginia constitutes an aggravated felony for purposes of immigration law." *Id.* at 260. Relevant to our inquiry, the court decided whether the Virginia burglary statute was divisible and thus subject to the modified-categorical approach as the Government argued. *Id.* at 261.

Based on *Descamps* and *Mathis*, the Fourth Circuit concluded that "it is clear that the Virginia burglary statute is indivisible." *Id.* After setting forth the statutory language, the court noted that "[S]ection 18.2-90 identifies four means of committing the requisite entry to sustain a statutory burglary conviction[.]" *Id.* at 262. That is, under *Mathis*'s rationale, the statute provides "four distinct factual means of describing how the statutory offense of burglary can be committed — rather than different elements — because the Virginia courts analyze them interchangeably." *Id.*

The court next addressed its 2011 *Foster* opinion, which involved whether Virginia's burglary statute qualified as a "violent felony" under the Armed Career Criminal Act ("ACCA") and is a case on which the Government relies here. *Id.* at 263. The Fourth Circuit acknowledged that it had ruled in *Foster* that the Virginia burglary statute was divisible "as to the locational aspect of the statute." *Id.* Given that ruling, the *Foster* court then performed a review of relevant documents under the modified-categorical approach to determine if the "defendant had committed the generic version of Virginia statutory burglary by breaking and entering a building or structure." *Id.*

The *Castendet-Lewis* panel determined *Foster*'s approach "does not survive the Supreme Court's decision in *Mathis*." *Id.* The court reached its conclusion based largely on the following rationale:

> Post-*Mathis*, however, it is clear that the locational aspect of
> section 18.2-90 enumerates "diverse means of satisfying a single

element of a single crime." Our conclusion stems from the clear language of section 18.2-90, which provides a list of locations — each of which would qualify as an element of statutory burglary. Moreover, the Supreme Court of Virginia appears to view the locational terms of section 18.2-90 interchangeably.

*Id.* at 263–64 (citations omitted). The Fourth Circuit was thus satisfied "that the Virginia burglary statute provides different factual means that constitute entry and location — not different elements," rendering the statute indivisible and not subject to the modified-categorical approach. *Id.* at 264. Ultimately, the court applied the categorical approach and determined that it was error to classify the conviction as an aggravated felony as "the Virginia offense of statutory burglary criminalizes more conduct than the generic federal offense of burglary."[3] *Id.*

The same result should follow here regarding the COV enhancement challenged by Reyes-Ochoa. Our unpublished opinion in *Membreno-David* does not support the opposite conclusion. To begin with, *Membreno-David* was decided pre-*Mathis* and did not analyze Virginia state law. It cannot control our analytical approach. Moreover, the relatively succinct divisibility analysis appears focused on the statute's *general* divisibility which, in light of *Mathis*, we now know is not the relevant inquiry:

> The Virginia statute is divisible as to how the entry is accomplished — breaking and entering during daytime or entering at nighttime without breaking. It also is divisible as to the target of the burglary — a house, building, or other alternatives not relevant here. Accordingly, application of the modified categorical approach is proper.

*Membreno-David*, 650 F. App'x at 196.

---

[3] We find instructive the fact that "the Virginia statutory scheme codifies generic common law burglary in a separate statute, Virginia Code § 18.2-89[.]" *See United States v. Farrow*, No. 7:05CR00078, 2017 WL 1393583, at *6 (W.D. Va. Apr. 13, 2017). We agree with the conclusion of that district court that the statute's structure "reinforces the conclusion that the statute is indivisible" and thus subject to the categorical approach. *Id.*

Similar to the Fourth Circuit's express disagreement with *Foster*, our prior rationale cannot stand in light of *Mathis*. Nor does it appear that post-*Mathis*, the divisibility of Virginia Code Section 18.2-90 is "subject to reasonable dispute," particularly when considering the Fourth Circuit's well-reasoned *Castendet-Lewis* opinion. *See United States v. Fields*, 777 F.3d 799, 802 (5th Cir. 2015). As Virginia Code Section 18.2-90 is an indivisible statute that sweeps broader than generic "burglary of a dwelling," we conclude it was a clear or obvious error to impose a COV enhancement based on Reyes-Ochoa's convictions under that statute.

### III.    *Remaining Prongs of Plain Error are Satisfied*

We must also determine whether the sentencing enhancement affected Reyes-Ochoa's substantial rights. Where a defendant shows "a reasonable probability of a different outcome absent the error," he has established an effect on his substantial rights. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). Absent the 16-level COV enhancement, Reyes-Ochoa asserts he would have been subject to a Guidelines range of 15 to 21 months, which is significantly lower than the 41-month within-Guidelines sentence the district court imposed. We agree that Reyes-Ochoa satisfies this uncontested prong, as a sentence under an incorrect Guidelines range "can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Id.*; *see also United States v. Rosales-Mireles*, 850 F.3d 246, 249 (5th Cir. 2017), *petition for cert. filed* (U.S. June 9, 2017) (No. 16-9493).

Finally, we examine whether "this plain error also affects the fairness of the judicial proceedings and warrants the exercise of our discretion to correct the error." *See United States v. Gonzalez-Terrazas*, 529 F.3d 293, 299 (5th Cir. 2008). In determining whether to exercise our discretion, we often consider how substantial the disparity is between the erroneous sentence and the

proper Guidelines range. *See United States v. Mudekunye*, 646 F.3d 281, 291 (5th Cir. 2011); *United States v. Garza-Lopez*, 410 F.3d 268, 275 (5th Cir. 2005).

Reyes-Ochoa relies on two unpublished opinions where we exercised our discretion to correct less egregious sentencing errors than the one he now challenges. In the first, we vacated and remanded a defendant's 12-month sentence, when that sentence was "at the top end of the incorrectly selected Guidelines range (6 to 12 months) and two months above the correct Guidelines range (4 to 10 months)." *See United States v. Santacruz-Hernandez*, 648 F. App'x 456, 458 (5th Cir. 2016). In the second, we vacated and remanded a sentence that was 15 months above the top end of the correct Guidelines range. *See United States v. Miller*, 657 F. App'x 265, 270 (5th Cir. 2016).

Reyes-Ochoa's sentence was 20 months above the top of his correct Guidelines range. We conclude that the "substantial disparity between the imposed sentence and the applicable Guidelines range warrants the exercise of our discretion to correct the error." *Mudekunye*, 646 F.3d at 291; *see also Garza-Lopez*, 410 F.3d at 275 (vacating and remanding a "sentence that was substantially greater than would otherwise have been permitted under the Sentencing Guidelines").

We VACATE the sentence and REMAND the case for resentencing.

No. 15-41270

EDITH H. JONES, Circuit Judge, dissenting:

Holding that the district court's sentence of 41 months imprisonment was legally erroneous because of intervening case law is one thing, and I reluctantly concede that in today's otherworldly approach to sentencing, this result may be justified. But requiring resentencing for this "plain error," *i.e.* error not raised in the district court, goes a step too far on the record before us. In *Molina-Martinez,* the Supreme Court held only that "in most cases, [a 'plain error' in the sentencing range] will suffice for relief *if the other requirements of Rule 52(b) are met."* *Molina-Martinez v. United States,* __U.S.__, 136 S. Ct. 1338, 1347 (2016)(emphasis added). Fed. Rule Crim. Pro. 52(b) includes a discretionary decision whether, even supposing a "plain error" affected the defendant's "substantial rights," the error created a "miscarriage of justice" or "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736, 113 S. Ct. 1770, 1779 (1993)(internal citations omitted). Not every plain sentencing error that affects substantial rights will be so egregious as to meet this test.

The majority here elect to order resentencing not because of any characteristic involving this defendant or his case, but only based upon two previous unpublished, non-precedential decisions where plain error relief was discretionarily awarded other defendants. Because the disparities between the correct and incorrect guidelines in those cases were less than the 21-month disparity here, the majority reasons, Reyes-Ochoa must be entitled to a new sentencing hearing. The majority cites no authority for the proposition that extraneous sentencing decisions can or should affect the discretionary, case-specific call we are to make at the fourth prong of plain error relief.

To offer this defendant the opportunity of resentencing, in my view, is what actually, seriously affects the fairness, integrity or public reputation of

11

this court's proceedings.   Both the defendant's criminal history and the tortured procedural history of this case militate against discretionary relief.

First, the majority refer innocuously to Reyes-Ochoa's prior burglary convictions, but his criminal history is replete with lawbreaking.   An illegal alien, he is identified as having 6 aliases and 2 Social Security numbers.   He has been deported twice before.   One deportation arose from his felony conviction for four residential burglaries in Virginia, each involving a different victim.   The PSR indicates that he was involved in but not prosecuted for nine residential burglaries, and he confessed to local Virginia authorities that he had participated in 25-30 residential burglaries.

Second, Reyes-Ochoa's appeal was docketed in this court in September 2015.   At that time, his appointed counsel sought to be relieved because there appeared to be no nonfrivolous issue for appeal.   Because our court meticulously oversees (through our Staff Attorneys' office) our huge docket of criminal sentencing issues, the request was denied pending issuance of a potentially controlling opinion on the Virginia burglary statute in the *Membreno-David* case.   That opinion, albeit unpublished, would have been decisive—against Reyes Ochoa--had the Supreme Court not proceeded to decide *Mathis* a month or so later.   *Mathis* has provoked reconsideration of numerous prior court decisions about criminal sentencing.   The process of appellate justice accordingly wound its way some months longer until, one month before this appeal was submitted, the Fourth Circuit overruled its prior precedent concerning the Virginia burglary statute.   In sum, but not in short, Reyes-Ochoa is the fortuitous beneficiary of the widespread uncertainty that now bedevils federal criminal sentencing.

The result of this resentencing decision will likely be immediate release from prison.  Reyes-Ochoa has been incarcerated since April 2015 on a sentence of 41 months imprisonment.   The new, correct guidelines range is 15-21

months, a period that lapsed while the appellate process went on.  Given this man's repeated violation of this country's laws, and the perverse results and incentives created by our never-ending sentencing uncertainty, I see no miscarriage of justice in the defendant's having to live with the consequences of the sentence he originally received, which was right when pronounced.