## **IN THE UNITED STATES COURT OF APPEALS**
## **FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**
August 20, 2018

Lyle W. Cayce
Clerk

No. 17-40425

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

CARLOS URBINA-FUENTES, also known as Carlos Roberto Fuentes Urbina

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

An able district court judge, without objection from defense counsel, relied on the wrong version of the Sentencing Guidelines—thereby generating the wrong sentencing range—in sentencing Urbina-Fuentes. Finding the error was plain, we vacate and remand for resentencing.

**I.**

The facts are straightforward. Carlos Urbina-Fuentes is a Honduran national who waded the Rio Grande and was detained by federal agents at a ranch in Laredo, Texas. He had unlawfully entered the United States twice before: once in 2004 and once in 2013, entries Urbina-Fuentes characterizes as part of a struggle to support a wife and seven young children in Honduras.

No. 17-40425

As the previous unlawful entries ended in deportations,[1] Urbina-Fuentes was charged in a one-count indictment for reentering the United States after a deportation, in violation of 8 U.S.C. § 1326(a). He pleaded guilty, accepting responsibility and admitting to the factual basis provided by the government. Urbina-Fuentes had prior convictions—as relevant here, a 2009 conviction for attempted burglary of an occupied dwelling under the applicable Florida statute. And when apprehended in 2013, he was convicted of unlawful reentry after deportation.

The process by which Urbina-Fuentes was sentenced for his latest illegal reentry lies in the heart of this case. The Probation Office submitted Urbina-Fuentes's Pre-Sentence Report on February 16, 2017, correctly recognizing that a court must ordinarily "use the Guidelines Manual in effect on the date that the defendant is sentenced,"[2] which, for Urbina-Fuentes, is the 2016 edition of the Guidelines.

The Ex Post Facto Clause prohibits raising a defendant's sentencing range higher than it would be if it were calculated under the edition in place at the time of a defendant's criminal conduct.[3] For Urbina-Fuentes—whose last "overt act [in this case] occurred on February 8, 2016"—this is the 2015 edition. So the Probation Office sought to determine whether applying the 2016 edition of the Guidelines would increase the sentencing range beyond the 2015 edition. It concluded that "the 2016 amendments to the Federal Sentencing Guidelines have been reviewed and no *ex post facto* issues have been identified."

---

[1] After his 2004 entry, Urbina-Fuentes managed to remain in the country until his deportation in 2009, living in Miami for the duration. After his 2013 entry, he was rapidly apprehended in Laredo, Texas, and promptly deported. He was convicted of illegal reentry for his second attempt to journey into the United States.

[2] U.S.S.G. § 1B1.11(a).

[3] U.S.S.G. § 1B.11(b)(1).

The Probation Office then calculated Urbina-Fuentes's offense level using the 2016 Guidelines. Under that edition, the baseline offense level for illegal reentry is eight, and the Probation Office added two four-point enhancements—one for Urbina-Fuentes's illegal reentry conviction in 2013,[4] and one for his attempted burglary of a dwelling conviction in Florida in 2009.[5] The Probation Office also gave Urbina-Fuentes a three-level reduction for acceptance of responsibility,[6] generating the total offense level of thirteen. It then calculated a criminal history score of nine, relying on the same two previous convictions and adding a set of Florida misdemeanor convictions for battery and criminal mischief, arising from a violent altercation between Urbina-Fuentes, his girlfriend, and several others.[7] It also took into account that Urbina-Fuentes was still on supervised release from his 2013 illegal reentry conviction. The combination of the two scores yielded a sentencing range of 24 to 30 months. Urbina-Fuentes made two objections to the Pre-Sentence Report's recommendations—neither concerned the Probation Office's use of the 2016 Guidelines.

On April 18, 2017, Urbina-Fuentes was sentenced to 30 months of imprisonment and a three-year term of supervised release.[8] In issuing the sentence, the court offered an increasingly rote explanation: it had "considered

---

[4] U.S.S.G. § 2L1.2(b)(1)(A) (2016) ("If the defendant committed the instant offense after sustaining[] a conviction for a felony that is an illegal reentry offense, increase by 4 levels[.]").

[5] U.S.S.G. § 2L1.2(b)(2)(D) (2016) ("If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant sustained[] . . . a conviction for any other felony offense (other than an illegal reentry offense), increase by 4 levels[.]").

[6] U.S.S.G. §§ 3E1.1(a), (b) (2016).

[7] The PSR also contains a reference to a 2005 homicide charge against Urbina-Fuentes—according to the PSR, a brawl between Urbina-Fuentes and another man turned bloody when Urbina-Fuentes produced a knife and stabbed the man. This charge did not result in prosecution, and the judge did not take it into consideration during sentencing.

[8] The lower court also imposed a fourteen-month prison sentence to run concurrently on the basis of Urbina-Fuentes's violation of his previous supervised release.

No. 17-40425

a sentence at the Guideline's range above and below it and . . . [found] that this sentence is appropriate under the circumstances[,] and [it] would make this sentence irrespective of the Guideline range." Once again, no objection to the court's use of the 2016 Guidelines was raised at the sentencing hearing.

## II.

Urbina-Fuentes urges that the 2016 Guidelines produced a higher sentencing range than the 2015 Guidelines in effect at the time of his criminal conduct. Because Urbina-Fuentes never objected on this basis below, we turn to the plain error framework.[9] A finding of plain error requires Urbina-Fuentes to make four showings: 1. there must have been an error; 2. that was plain; 3. that affected the defendant's substantial rights; and 4. that "seriously affects the fairness, integrity, or public reputation of judicial proceedings."[10] If the first three prongs have been met, "the court of appeals has the discretion to correct [the error] but no obligation to do so" under the fourth prong.[11] That discretion has recently been cabined by the Court, however; it recently explained that "[i]n the ordinary case, . . . the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings."[12]

## III.

The government does not dispute that the court committed error by using the 2016 Guidelines. We outline that error here, before turning to its "plainness." It is settled that the Ex Post Facto Clause is violated when a sentencing court uses a Guidelines edition generating a higher sentencing range than the range of the edition in effect on the date of the defendant's

---

[9] *See, e.g.*, *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009).

[10] *See United States v. Olano*, 507 U.S. 725, 731–35 (1993) (alteration omitted).

[11] *United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010) (emphasis omitted).

[12] *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018).

criminal conduct.[13] We therefore ask whether the 2016 Guidelines edition generated a higher sentencing range for Urbina-Fuentes than the 2015 edition would have.

It did. Under the 2015 edition of the Guidelines, § 2L1.2 contemplated a possible sixteen-point increase to a defendant's offense level if he was previously convicted of a "crime of violence,"[14] and an eight-point increase if he was previously convicted of an "aggravated felony."[15] In order to conclude that the 2015 Guidelines would not have generated a lower sentencing range than the 2016 Guidelines, the Parole Office and district court must have decided that one of these two enhancement provisions would have applied on the basis of Urbina-Fuentes's Florida burglary conviction.

First, the possible eight-point enhancement for a previous conviction for an "aggravated felony." Under the 2015 Guidelines, that term "ha[d] the meaning given . . . in . . . 8 U.S.C. § 1101(a)(43)."[16] The definition of "aggravated felony" encoded in 8 U.S.C. § 1101(a)(43), in turn, limits the term's application to "crime[s] of violence . . . for which the term of imprisonment [is] at least one year."[17] Urbina-Fuentes was only sentenced to 364 days of imprisonment for his Florida burglary conviction, so it could not have qualified as an aggravated felony under the 2015 edition of the Guidelines.

---

[13] *See Peugh v. United States*, 569 U.S. 530, 544 (2013) ("A retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation.").

[14] U.S.S.G. § 2L1.2(b)(1)(A) (2015) ("If the defendant previously was deported, or unlawfully remained in the United States, after a conviction for a felony that is . . . (ii) a crime of violence . . . increase by 16 levels if the conviction receives criminal history points under Chapter Four.").

[15] U.S.S.G. § 2L1.2(b)(1)(C) (2015) ("If the defendant previously was deported, or unlawfully remained in the United States, after a conviction for an aggravated felony, increase by 8 levels.").

[16] U.S.S.G. § 2L1.2 cmt. n.3(A).

[17] 8 U.S.C. § 1101(a)(43)(F) (2015).

Inapplicability of the sixteen-point enhancement for "crime[s] of violence" under the 2015 Guidelines requires more explanation. According to the 2015 Guidelines, "'[c]rime of violence' means any of the following offenses under federal, state, or local law: . . . burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."[18] At the time of Urbina-Fuentes's attempted burglary commission, the relevant portion of the applicable Florida statute read as follows:

> (b) For offenses committed after July 1, 2001, "burglary" means:
> 1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; . . .
>
> (3) Burglary is a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a:
> (a) Dwelling, and there is another person in the dwelling at the time the offender enters or remains; . . . .

Fla. Stat. Ann. § 810.02(1)(b) & (3)(a) (West 2008). Furthermore, a separate provision of the statute defined "dwelling" to consist of "a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof."[19] These statutes are essentially the same today.

---

[18] U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2015); *see also United States v. Gomez-Gomez*, 547 F.3d 242, 244 (5th Cir. 2008) (en banc) (defining an offense as a "crime of violence" if it "(1) has physical force as an element, or [if it] (2) qualifies as one of the enumerated offenses" in the Guidelines' definition).

[19] Fla. Stat. Ann. § 810.011(2) (West 2008).

No. 17-40425

This statute does not "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another."[20] The only question, then, is whether the statute corresponds to the 2015 Guidelines' reference to generic "burglary of a dwelling" in its definition of "crime of violence."

As with parallel situations involving the Armed Career Criminal Act, this comparison ordinarily requires the use of the categorical approach.[21] Under that approach, a court is required to compare the criminal statute as a whole to the corresponding federal, generic definition of the offense; if any aspect of the former is broader than the latter, convictions under the statute may not count as crimes of violence.[22] There is a wrinkle—when some portion of the statute in question is phrased in disjunctive alternatives.[23] In that case, the court must first determine whether the disjunctive portions describe alternative elements tantamount to different offenses or separate means of committing the same offense.[24] If they are alternative elements, then a court may deploy the so-called modified categorical approach to focus on the specific portion of the statute under which the defendant was convicted.[25]

---

[20] U.S.S.G. § 2L1.2 cmt. (B)(iii); *see United States v. Esprit*, 841 F.3d 1235, 1237 (11th Cir. 2016) ("A conviction under this statute[, Fla. Stat. § 810.02(1)(b)(1),] indisputably does not implicate the elements clause [of the 'crime of violence' definition in the Armed Career Criminal Act].").

[21] *See, e.g.*, *United States v. Hinkle*, 832 F.3d 569, 572 (5th Cir. 2016) ("In determining whether a prior conviction is included within an offense defined or enumerated in the Guidelines, . . . . [w]e employ the so-called 'categorical' approach.").

[22] *See id.*

[23] *See id.* at 573.

[24] *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) ("The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means. If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime.").

[25] *See id.*

7

The Florida burglary statute reaches beyond the federal generic definition of "burglary of a dwelling" in its express inclusion of burglary of "curtilage[s] []of" dwellings. In examining this very Florida burglary statute, we have held, alongside several sister circuits, that a state offense exceeds the generic definition of burglary of a dwelling if it extends to curtilages.[26] There remains the question of whether the modified categorical approach would have been available to enable the lower court to sidestep this feature.

Before *Mathis*, the Fifth Circuit twice used the modified categorical approach to exclude from its consideration the portion of the Florida burglary statute pertaining to burglary of curtilages.[27] Both of these decisions, however, moved from the premise that the modified categorical approach is available whenever adjudicative records disclose the precise factual basis of a defendant's conviction.[28] That premise no longer holds. The modified categorical approach is now only available when a court confronts alternative statutory elements tantamount to distinct offenses.[29]

---

[26] *See United States v. Gomez-Guerra*, 485 F.3d 301, 304 (5th Cir. 2007) (per curiam) ("Because the curtilage is the grounds around the dwelling and is not the dwelling itself, we cannot hold that Gomez was convicted of the enumerated offense of 'burglary of a dwelling.'"); *see also United States v. Garcia-Martinez*, 845 F.3d 1126, 1134 (11th Cir. 2017) ("We hold that Florida's inclusion of curtilage in its definition of dwelling makes its burglary of a dwelling offense non-generic."); *United States v. Ramirez*, 708 F.3d 295, 304 (1st Cir. 2013) ("We agree with the Fifth Circuit and hold the inclusion of 'curtilage' makes Florida's definition of burglary of a dwelling broader than the generic meaning of burglary of a dwelling under the Guidelines.").

[27] *See United States v. Castillo-Morales*, 507 F.3d 873, 875–76 (5th Cir. 2007); *United States v. Stewart*, 208 F. App'x 291, 292 (5th Cir. 2006) (per curiam).

[28] *See Castillo-Morales*, 507 F.3d at 875 ("If the statute of conviction is overly broad, we may also examine certain adjudicative records to determine whether the prior conviction qualifies as an enumerated offense." (internal quotation marks omitted)).

[29] *Mathis*, 136 S. Ct. at 2256.

No. 17-40425

The requirement that a statute must be meaningfully alternatively phrased in the first place is implicit in the *Mathis* Court's analysis.[30] It is not clear that the relevant portion of Florida's burglary statute meets this threshold requirement. Once again, the location definition simply dictates that a dwelling is "a *building or conveyance of any kind*, including any attached porch, whether such *building or conveyance* is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, *together with the curtilage thereof*."[31] In the most natural reading of this language, its nongeneric portion—"together with the curtilage thereof"—modifies both of the only two alternatives listed in the statute: "building or conveyance." If so, the statute is not phrased in the alternative such that one option is generic and one is not. The two alternative locations just consist of buildings "together with the[ir] curtilage[s]" and conveyances "together with the[ir] curtilage[s]." Both are nongeneric because they extend to curtilages. And that means that the modified categorical approach would have been unavailable even under the Court's pre-*Mathis* articulation of the modified categorical approach, located in *Descamps*.[32]

Even if the Florida burglary statute's dwelling definition were alternatively phrased in the relevant sense,[33] the methodology of *Mathis* makes clear that it describes different means of committing a single offense.

---

[30] *See id.* ("The first task for a sentencing court faced with an *alternatively phrased statute* is thus to determine whether its listed items are elements or means." (emphasis added)).

[31] Fla. Stat. Ann. § 810.011(2) (West 2008) (emphasis added).

[32] *Descamps v. United States*, 570 U.S. 254, 264 (2013) ("*If at least one, but not all of those crimes* [i.e., elements] *matches the generic version*, a court needs a way to find out which the defendant was convicted of. That is the job, as we have always understood it, of the modified approach[.]" (emphasis added)).

[33] Presumably by taking the word "together" as a disjunctive, rather than conjunctive, term. *See Together*, Merriam-Webster Online Dictionary, *available at* https://www.merriam-webster.com/dictionary/together (last visited July 24, 2018).

By *Mathis* we must conduct the divisibility inquiry by first determining whether state law provides an answer.[34] The Florida Supreme Court has explained that, "for the purposes of the burglary statute, it would not matter whether [a defendant] was in [a] secluded back yard or back bedroom; in either circumstance, the courts must consider him to have been within [a] dwelling."[35] Thus, "[t]here is no crime denominated burglary of a curtilage; the curtilage is not a separate location wherein a burglary can occur. . . . Entry onto the curtilage is, for the purposes of the burglary statute, entry into the structure or dwelling."[36] The Florida Supreme Court has thus clearly signaled that burglary of a curtilage represents just one possible means of committing burglary of a dwelling. This proposition finds further support in the standard jury instructions for burglary in Florida, which *Mathis* also held to be relevant in the event that state law is unclear; these instructions list all locational elements that fit the statute's definition of dwelling alongside each other, presenting them as fungible members of one category.[37]

We find it clear that the modified categorical approach cannot be used to exclude the Florida burglary statute's applicability to curtilages from consideration. A conviction for burglary of a dwelling in Florida is not a "crime of violence" for the purposes of the 2015 Guidelines.[38]

---

[34] *See Mathis*, 136 S. Ct. at 2256.

[35] *Baker v. State*, 636 So.2d 1342, 1344 (Fla. 1994).

[36] *Id.*

[37] *See In re Standard Jury Instructions in Criminal Cases—Report No. 2012-01*, 109 So.3d 721, 726 (Fla. 2013) ("'Dwelling' means a building [or conveyance] of any kind, whether such building [or conveyance] is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, *together with the enclosed space of ground and outbuildings immediately surrounding it*. For purposes of burglary, a 'dwelling' includes an attached porch or attached garage." (emphasis added)).

[38] *See United States v. Thorne*, 837 F.3d 888, 889 (8th Cir. 2016) (per curiam) ("[T]he government concludes the burglary statute in question, as interpreted by the Florida Supreme Court, is overinclusive but non-divisible. It encompasses entry onto the curtilage of a building without separating entry into a building and entry onto a curtilage as separate

No. 17-40425

As Urbina-Fuentes's burglary conviction is not an "aggravated felony" or a "crime of violence," sentencing under the 2015 edition of the Guidelines would have generated a sentencing range lower than the one generated from the 2016 edition. Under the 2015 Guidelines, the district court should have arrived at a total offense level of ten[39]—that total, combined with Urbina-Fuentes's criminal history score, would have corresponded to a sentencing range of 15 to 21 months, a fair bit below the 24 to 30 month range under which he was ultimately sentenced.[40] This disparity, in turn, means that Urbina-Fuentes was sentenced in violation of the Ex Post Facto Clause. We turn to the remaining prongs of plain error analysis.

**IV.**

The second and fourth prongs of plain error are the dual sites of the dispute between Urbina-Fuentes and the government.[41] Not all errors meet the second prong, for to do so, an error must have also been "clear or obvious." Indeed, "[p]lain error is error so clear or obvious that 'the trial judge and prosecutor were derelict in countenancing it, even absent the defendant[']s

---

elements of different offenses."); *Esprit*, 841 F.3d at 1241 ("Florida's burglary statute creates a single indivisible crime that includes non-generic burglary.").

[39] Under the 2015 Guidelines, Urbina-Fuentes would have still received a baseline offense level score of 8, U.S.S.G. § 2L1.2(a) (2015), he would have received a 4-point enhancement for receiving a felony conviction before his past deportation, U.S.S.G. § 2L1.2(b)(1)(D) (2015), and he would have received a 2-point reduction for acceptance of responsibility corresponding to the one he received under the 2016 guidelines edition, U.S.S.G. § 3E1.1(a) (2015).

[40] U.S.S.G. Ch.5 Pt.A, Sentencing Table (2015).

[41] The government fully concedes that the sentencing error affected Urbina-Fuentes's substantial rights and that the third prong of plain error has therefore been satisfied. This is so because the Supreme Court has held that "[w]hen a defendant is sentenced under an incorrect Guidelines range . . . the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016). Additionally, the district court only said that it considered the sentencing ranges "above and below" the applicable 2016 Guidelines range, both of which are still notably higher than the 2015 range under which Urbina-Fuentes should have been sentenced.

timely assistance in detecting it.'"[42] We have explained that "if a defendant's theory requires the extension of precedent, any potential error could not have been plain."[43] However, when a legal question is unsettled at the time it is before a sentencing court, it may still be sufficiently clear or obvious if it is settled at the time it is reviewed on direct appeal.[44]

The government argues that the district court's error cannot have been clear or obvious given Fifth Circuit caselaw applying the modified categorical approach to the Florida burglary statute. While recognizing that *Mathis* changed the game with respect to divisibility analysis, the government argues that its application to the Florida statute would require a "huge extension of precedent in this Court." Because we "ha[ve] not previously addressed the issue," the argument goes, the district court's failure to apply *Mathis* to the statute cannot have been plain error. The government recognizes that other cases in other circuits may have since settled the question *for those circuits*— however, it claims that they "have no precedential value" before us, and it also points out that most were decided under a de novo standard.

But one of our recent decisions stands athwart the government's path. In *United States v. Reyes-Ochoa*, we considered an alternatively phrased Virginia statute that the district court found to be divisible by pre-*Mathis* caselaw in both the Fourth and Fifth Circuits.[45] After the sentencing decision, the Supreme Court issued *Mathis* and the Fourth Circuit swiftly reversed course to hold that the statute was actually indivisible—a holding that would

---

[42] *Trejo*, 610 F.3d at 319 (quoting *United States v. Hope*, 545 F.3d 293, 296 (5th Cir. 2008)).

[43] *United States v. Garcia-Rodriguez*, 415 F.3d 452, 455 (5th Cir. 2005) (internal quotation marks omitted).

[44] *Henderson v. United States*, 568 U.S. 266, 269 (2013) ("In our view, as long as the error was plain as of that later time—the time of appellate review—the error is 'plain' within the meaning of the Rule.").

[45] 861 F.3d 582, 586 (5th Cir. 2017).

have prevented the *Reyes-Ochoa* defendant's prior conviction from counting as a crime of violence.[46] We agreed with the Fourth Circuit's analysis, holding the statute to be indivisible.[47] In short, we recognized the error. But more to the point here, we held that this error was sufficiently clear to satisfy the second prong of plain error.[48] And we did so despite the fact that all relevant Fifth Circuit precedent (and Fourth Circuit precedent at the time the sentencing court acted) pointed in the opposite direction.[49]

*Reyes-Ochoa* largely disposes of our work under the second prong of plain error. We have already held that a statute's indivisibility under *Mathis* can be sufficiently clear even when our pre-*Mathis* caselaw uniformly points in the opposite direction and when we have yet to consider the question anew post-*Mathis*. Under *Mathis*, the Florida burglary statute's divisibility is simply no longer "subject to reasonable dispute."[50] In fact, the Florida burglary statute is even more clearly indivisible than the one the *Reyes-Ochoa* court examined. That court, after all, only had the benefit of one intervening Fourth Circuit opinion to guide it. Here, we have multiple post-*Mathis* decisions across the Eighth and Eleventh Circuits all pointing in the same direction: the Florida statute is indivisible.[51]

---

[46] *See id.* at 587.

[47] *See id.*

[48] *See id.* at 589.

[49] *See id.* at 588–89. One member of the *Reyes-Ochoa* panel dissented from the majority's application of plain error, but not on the ground that the mistake was insufficiently clear—the dissent focused only on the question of whether the fourth prong of plain error was satisfied. *See id.* at 590 (Jones, J., dissenting) ("To offer this defendant the opportunity of resentencing, in my view, is what actually, seriously affects the fairness, integrity or public reputation of this court's proceedings.").

[50] *See id.* at 588 (quoting *United States v. Fields*, 777 F.3d 799, 802 (5th Cir. 2015)).

[51] *See United States v. Garcia-Martinez*, 845 F.3d 1126, 1134 (11th Cir. 2017) ("[T]he locational element of Florida burglary of a dwelling is indivisible. And because that locational element—the residence plus its curtilage—is broader than the generic definition of a dwelling, Florida's second degree burglary of a dwelling offense is non-generic."); *United States v. Diaz-Morales*, 664 F. App'x 871, 73–74 (11th Cir. 2016) ("*Esprit* makes plain that

No. 17-40425

Our determination that the error was plain therefore does not require an "extension of precedent," much less a "huge" one. We have always held that burglary of a curtilage is nongeneric.[52] And a straightforward application of *Mathis* produces the unmistakable conclusion that the Florida burglary statute is indivisible. We therefore conclude that the nongeneric status of the Florida burglary statute—and the consequent fact that the 2015 Guidelines would result in a lower sentence for Urbina-Fuentes—is clear. Urbina-Fuentes has met the second prong of plain error.

## V.

Finally, the parties dispute the applicability of the fourth prong of plain error: whether the error below affected the "fairness, integrity, or public reputation of judicial proceedings" such that it should be reversed.[53] The Court recently provided guidance on the scope of this standard. In *Rosales-Mireles*, it explained that our previous approach to the fourth prong of plain error was wayward.[54] The Court made clear that a mistake need not "shock the conscience" in order to satisfy the fourth prong of plain error, nor must it serve "as a powerful indictment against our system of justice, or seriously call into

---

Florida's burglary offense is neither generic nor divisible. That means a Florida burglary conviction is never 'burglary of a dwelling' as that term is defined by federal law."); *United States v. Thorne*, 837 F.3d 888, 889 (8th Cir. 2016) (per curiam) (describing the government's own conclusion that "the burglary statute in question, as interpreted by the Florida Supreme Court, is overinclusive but non-divisible").

It does not matter that the Eleventh Circuit decisions applying *Mathis* to the Florida burglary statute primarily involved de novo review. As a conceptual matter, these cases still stand for the flat proposition that the burglary statute is indivisible. Whether or not the lower courts in *those* cases committed plain error—as opposed to the lower court in *this* case—is simply beside the point. In fact, the Fourth Circuit decision that the *Reyes-Ochoa* court relied on to establish plain error was also involved in de novo review. *See Castendet-Lewis v. Sessions*, 855 F.3d 253, 260 (4th Cir. 2017).

[52] *See Gomez-Guerra*, 485 F.3d at 304.

[53] *See Olano*, 507 U.S. at 736 (internal quotation marks omitted).

[54] *Rosales-Mireles*, 138 S. Ct. 1897 (2018).

question the competence or integrity of the district judge."[55] In requiring as much, our former approach had been unduly demanding.[56] Instead, "[i]n the ordinary case, . . . the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings."[57]

Several observations flow from the Court's analysis. First, we need not worry about exercising our fourth-prong discretion "sparingly" in sentencing cases like this one—"a decision remanding a case to the district court for resentencing on the basis of a Guidelines miscalculation . . . does not demand such a high degree of caution," largely because it is a relatively low-cost measure.[58] Second, and relatedly, when a sentencing error is clear and "reasonably likely to have resulted in a longer prison sentence than necessary," "most defendants" will be entitled to relief.[59] We should deny relief only if there are "countervailing factors that otherwise further the fairness, integrity, or public reputation of judicial proceedings."[60] Third and finally, a defendant's criminal history should be irrelevant to our decision whether or not to grant plain error relief.[61] That history may be important to the *district court*, but "[i]t does not help explain whether [a] plain procedural error . . . seriously affects the fairness, integrity, or public reputation of judicial proceedings."[62] Criminal history is therefore not one of the "countervailing factors" that the Court had

---

[55] *Id.* at 1906–07 (internal quotation marks omitted).

[56] *See id.*

[57] *See id.* at 1911.

[58] *Id.* at 1909.

[59] *Id.* at 1910.

[60] *Id.*

[61] *United States v. Sanchez-Arvizu*, 893 F.3d 312, 317–18 (5th Cir. 2018) (per curiam).

[62] *Rosales-Mireles*, 138 S. Ct. at 1910 n.5.

in mind, and the Court has rejected our caselaw insofar as it stood for the contrary view.[63]

We start with the proposition that prisoners such as Urbina-Fuentes should ordinarily be entitled to relief—he has suffered a clear error that affects his substantial rights by making it reasonably likely that he was sentenced for a longer term than necessary. This record does not appear to contain the kind of "countervailing factors" that suggest that we should depart from the new normal. First, the government notes that the district court asserted that it "considered a sentence at the Guideline's range above and below it and . . . [it] would make this sentence irrespective of the Guideline range." It argues that this fact justifies denial of relief. This argument is flawed. The lowest range the district court considered—the next one below the range under which Urbina-Fuentes was sentenced—was 21 to 27 months. But the error-free range under which Urbina-Fuentes *should* have been sentenced is only 15 to 21 months. Because the correct range is lower than anything the district court considered, we cannot say with any confidence that the error had no effect on Urbina-Fuentes's sentence.[64] More importantly, it is clear from *Rosales-Mireles* that the Court expects relief to "ordinar[il]y" be available to defendants in sentencing cases when the first three prongs were met.[65] If all it took for us

---

[63] *See, e.g.*, *United States v. Martinez-Rodriguez*, 821 F.3d 659, 666 (5th Cir. 2016) ("[W]e have declined to exercise our discretion to notice sentencing errors under the fourth prong when these types of facts are involved—e.g., recidivistic behavior."); *United States v. Segura*, 747 F.3d 323, 331 (5th Cir. 2014) ("The protracted nature of [the defendant's] criminality and the circumstances surrounding the instant conviction do not persuade us to conclude that the district court's decision seriously affects the fairness, integrity, or public reputation of judicial proceeds.").

[64] Further, insofar as this argument concerns the third prong of plain error—whether the error actually affected the defendant's substantial rights—the government has already conceded that the error had an effect. It cannot now simply transplant its forfeited arguments into the fourth prong context.

[65] *Rosales-Mireles*, 138 S. Ct. at 1911.

to deny relief under the fourth prong was a boilerplate statement like the one here, the Court's expectation would not come to pass.

The government points us to Urbina-Fuentes's "violent criminal history." But again, by *Rosales-Mireles*, criminal history is not here a relevant consideration.[66] The government also assigns significance to the fact that Urbina-Fuentes has been deported twice. The defendant in *Rosales-Mireles* had also previously been removed—the majority said nothing about this fact, and we must therefore conclude that it, too, is ultimately irrelevant.[67] Finally, there's the size of the sentencing disparity at stake. Here, there is no overlap between the correct sentencing range and the incorrect one: the correct range under the 2015 Guidelines was 15 to 21 months, completely below the erroneous 24 to 30 month range under which Urbina-Fuentes was sentenced. While we have previously declined to exercise our discretion in cases involving larger sentencing disparities,[68] *Rosales-Mireles* granted relief for a narrower disparity.[69] The size of the sentencing disparity here therefore also does not amount to the kind of countervailing factor that should justify our refusal to step in to correct the error.

## VI.

We vacate the district court's sentencing decision and remand for further proceedings in line with this opinion.

---

[66] *Id.* at 1910 n.5.

[67] *See id.* at 1916 (Thomas, J., dissenting).

[68] *See, e.g.*, *United States v. Wikkerink*, 841 F.3d 327, 337 (5th Cir. 2016) (holding the fourth prong of plain error unsatisfied even when the defendant received a 360 month sentence and when the correct sentencing range capped out at 180 months).

[69] The defendant in *Rosales-Mireles* was sentenced under the 77 to 96 month range instead of the proper 70 to 87 month one. *Rosales-Mireles*, 138 S. Ct. at 1905.